WILLIAM S. THOMAS, ˙ADMINISTRATOR, ET AL., *vs.* KATIE H. COCHRAN ET. AL.

*Benefit Societies—Death of Beneficiary Named in the Certificate in the Lifetime of a Member.*

A member of a mutual benefit association held two certificates in the nature of life insurance policies, in which his wife was designated as the beneficiary, to whom the fund was ·to be paid upon his death. She died in the lifetime of the member and he failed to designate another beneficiary. Under the rules of the association, the member had a right to change the beneficiary at will, and the by-laws provided for the distribution of the fund upon the death of a member, in case he had not designated a beneficiary, but no provision was made as to distribution in the event of the death of a beneficiary in the lifetime of a member. *Held*, that the proceeds of the insurance were payable to the administrator of the wife, her interest in the same being similar to that of a beneficiary in an ordinary life insurance policy, and the fact that her husband attempted to dispose of the fund by his will makes no difference, because he had no property in the same, but only a power to designate a beneficiary in the manner prescribed by the by-laws of the association.

Four appeals from a *pro forma* decree of the Circuit Court No. 2, of Baltimore City, upon a special case stated under General Equity Rule No. 47.

The cause was argued before McSHERRY, C. J., BRISCOE, PAGE, BOYD and SCHMUCKER, JJ.

*William S. Thomas*, for himself as administrator of the estate of Ann M. Herring.

1. The rule is that it is only where the constitution or by-laws of the company dispose of the fund to a class such as widow, children, parents, &c., of the assured, has any Court held that an administrator of one of this class is excluded from the benefit fund, and the authorities are almost unanimous in holding that where the beneficiaries are not limited to particular persons or classes of persons the fund is payable to the deceased beneficiary's administrator. The constitution and by-laws of this company do not define whom the members shall appoint as beneficiary, but leaves to his discretion the appointment of any person who, under the law of the land, has an insurable interest in the life of the assured, the law governing the appointment to and disposition of this insurance money is, therefore, that applied to ordinary insurance companies.

2. The general principle of law is that on the death of the assured, should the beneficiary be dead, the fund goes to the personal representatives of the deceased beneficiary. *American and Eng. Encyl. of Law*, 2nd ed., page 987. A study of the following cases in which this question has been variously raised and determined will show the reasons for the ruling on the point. In *Foster, Admr., v. Foster, Admr.*, 50 Wis. 603, the Court groups the insurance cases as follows : Cases deciding that a person who procures a policy of insurance on his own life for the benefit of another, and pays the premiums thereon, may dispose of it by will or otherwise to the exclusion of the beneficiary named in the policy. *Clark* v. *Durand*, 12 Wis. 223 ; *Kerman* v. *Howard*, 23 Wis. 108. Cases holding that the taking of a policy in the name of a beneficiary was an irrevocable settlement which could not be divested without the consent of the beneficiary. *Ricker* v. *Charter Oak Life Ins. Co.*, 6 N. W.

Rep. 771. The Court then determines that a middle ground should be taken, and decides that the beneficiary has a subsisting interest in the policy, but not an absolute ownership therein, and that the interest of the beneficiary is subject to the right of the insured, who has paid the premium, to change the beneficiary, with the consent of the company.

In *Drake* v. *Stone* 58 Ala. 133, it was held: "Under an ordinary life policy an interest vests in the person for whose benefit it is taken out when the policy is delivered, and on the death of the beneficiary, either before or after the death of the assured, the insurance money goes by bequest or succession as other personal property of the beneficiary." In *Almstead* v. *Benefit Society*, 37 Kansas, 95, insurance policy was made payable to the wife of the assured by the following language: To "Jannet Almstead or her legal representatives." Jannet Almstead died, and the assured in his will directed the proceeds of the policy should be paid to his executors. On a bill of interpleader filed by the society to determine to whom the fund belonged, it was held it should be paid to the legal representatives of his wife, the form prescribed in the by-laws of the society with regard to changing the beneficiary not having been followed, applying the maxim "*Expressio unius est exclusio alterius.*" In *Hooper* v. *Sugg*, 102 N. Ca. 115, policy payable to "Wife and Children." Wife and one child died before the assured; held, that the interest of the deceased beneficiary is payable to their administrators. See also to same effect *Simmons* v. *Biggs*, 99 N. Ca. 236. In *Connecticut Mutual Life Ins. Co.* v. *Baldwin*, 15 Rhode Island, 106, the policy was expressed for the benefit of "Mary T. Fifield and my children." Mary T. Fifield and one of the children died before assured, and it was held their administrators took their share of the fund.

In *Phœnix Mutual Ins. Co.* v. *Dunham*, 45 Conn. 79, a husband procured a policy on his life payable "to his wife for her sole use, or in case of her death before his, to their

children." The husband died after the wife, and it was held the policy should be paid to her administrators and not to his. *Continental Life Ins. Co.* v. *Palmer*, 42 Conn. 60. The Court, in deciding the administrator of a deceased beneficiary is the proper person to whom the life insurance should be paid, compares the contingent interest in a life insurance contract to a contingent remainder under a will, and continues : " In *Fearne on Remainders*, 364, the rule is laid down as follows : ' And in general it seems that contingent interests pass to the real or personal representatives, according to the nature of such interests, as well as vested interests, so as to entitle such representatives to them when the contingencies happen." The rule is stated by CHANCELLOR KENT, 4 Commentaries, 261 : " All contingent and executory interests are assignable in equity, and will be enforced, if made for a valuable consideration, and it is settled that all contingent estates of inheritance, as well as springing and executory uses, and possibilities coupled with an interest, where the person to take is certain, are transmissible by descent and are devisible and assignable." See also the following cases holding the interest of the beneficiary survives to the next of kin : *Hutson* v. *Merrifield*, 51 Indiana, 24 ; *Libby* v. *Libby*, 37 Maine, 359; *Swan* v. *Snow*, 11 Allen, 224.

*Roger W. Cull* for G. H. Williar *et al.*, grandchildren of J. Q. A. Herring.

Mr. Herring insured his life in a benefit company whose plan and whose beneficiaries, where there was a failure to designate, plainly embraced his grandchildren within the scope of his bounty. When he came to make his will he emphasized the intention thus indicated by expressly bequeathing to these grandchildren their mother's share of the insurance on his life. It would, indeed, be strange, then, admitting, as we must, that there is *any* exception to the rule that children ordinarily means only surviving children, if an intention so manifested, so plainly indicated to embrace grandchildren should not be allowed to control and put this

case within the principle of the exception. It is therefore respectfully submitted, that in view of the "surrounding circumstances" the declared objects and beneficiaries of the insuring association and the manifest intention of the insured so gathered from them, "children" in this case ought to be so construed as to embrace "grandchildren," and the fund in controversy be awarded to the grandchildren appellants together with the surviving children. *McLin v. Calvert*, 78 Ky. 473; *Duval v. Goodson*, 79 Ky. 224; *In re Conraa's Estate*, 89 Iowa, 396; *Expressmen's Aid Society v. Lewis*, 9 Mo. Ap. 412; *Continental Ins. Co. v. Palmer*, 42 Conn. 60.

*Oscar Leser* for the executors of J. Q. A. Herring.

The will of the deceased expressly bequeaths the insurance money, and there is no prohibition in the constitution or by-laws of the association against an appointment to the executors. It is contended by the appellee that the appointment of the executors was not made in accordance with the by-laws of the association, but it is submitted that inasmuch as this by-law was made for the protection of the association, and that formality has been waived by the association, no one can raise this question. In *Martin v. Stubbins*, 126 Illinois, 407, the change in the beneficiary was not made in accordance with the State statute, and it was decided that the society *only* could urge this as a defence. In *Manning* v. *A. O. U. W.*, 86 Ky. 136, the by-law of the order provided "any member holding a beneficiary certificate desiring at any time to make a new direction as to its payment, may do so by authorizing such change in writing on the back of the certificate in the form prescribed, attested by the recorder with the seal of the lodge attached and by the payment of the sum of fifty cents, but no change shall be valid or have any binding force or effect unless said change shall have been reported to the Supreme or Grand Recorder, the old certificate, if

practicable, filed with him, and a new beneficiary certificate issued thereon."

The member had the certificate issued to his brother ; he afterwards married and wrote the society to send his policy made out to his wife ; this was done after the member's death, and the Court held "the intention of the assured was to change the benefit ; it is asked by a third party, whose interest in the insurance was liable to end at any time, at the will of the assured, that his intention shall be defeated ; such a will would sacrifice substantial justice to mere form." In the case of *Splawn* v. *Chew,* 60 Texas, 533, a by-law provided "members may at any time, when in good standing, surrender the certificate and have a new one issued payable to such beneficiaries dependent upon them as they may direct, upon payment of a certificate fee of fifty cents. A member took out a policy payable to his father and mother, without attempting to make any change of beneficiaries as provided in this by-law, he made a will bequeathing the proceeds of this certificate to his wife and children and soon afterward died. On a bill of interpleader, filed to determine to whom the fund belonged, the Court said : " The company are entitled to know who are the parties entitled to the benefit of the money, and this is an effectual and certain means of giving that information, but like all provisions in the by-laws of private corporations, it may be waived at the option of the corporation, being for its benefit alone. The suit is not between the claimant of the money and the corporation by whom it is to be paid, and the latter does not object to the manner in which the change of beneficiaries was made. We think the change was fully effected by the will."

In *Catholic Benefit Association* v. *Priest,* 46 Mich. 430, the rules of a society provided, that on the death of a member, his share of the beneficiary fund should go to the person named on the will-book, and if he named no one, it should be equally divided among his family. Held, a will subsequently made, revoked the former appointment

and was a valid appointment.    See also to the same effect—
*Titsworth* v. *Titsworth*, 40 Kansas, 573; *Spencer* v. *Myers*,
(N. Y. Ct. App.), 34 L. Rep. An. 175; *Petty* v. *Willson*, 4
Ch. App. Cases, 574; *Joyce on Insurance*, vol 2, sec. 754.

In the case of *Hellenberg* v. *Dist. No. 1 of I. O. of B. B.*,
94 N. Y. 580, cited by the appellee, the Supreme Court of
New York held, that had the association waived the by-law,
the appointment by will would have been good.

*Ernest Hoen, Jr.*, for the surviving children of J. Q. A.
Herring, appellees.

" The contract of membership in a mutual association is
always made with reference to and always includes the
constitution and by-laws, of which every member is bound
to take notice, whether they are specially referred to in the
contract or not and whether or not they are in fact known
to the member."    3 *A. & E. Enc.*, (2nd ed.), 1081; *Osceola
Tribe, No. 11, &c.* v. *Schmidt*, 57 Md. 98; *Treadway* v.
*Hamilton*, 29 Conn. 68; *Fuller* v. *B. & O. R. A.*, 67 Md.
433; *Yoe* v. *Benjamin Howard Association*, 63 Md. 86;
*Revised Stats. N. Y.* (9th ed. ), vol. 2, Art. 7, sections 230 to
239.

" When a designated beneficiary dies prior to the death
of the member the benefit fund does not on the subsequent
death of the member go to the administrator nor descend
to the heirs of the beneficiary." *Niblack, Acc. Ins. & Ben.
Soc.*, page 391; *Richmond* v. *Johnson*, 28 Minn. 447.    And
this is so even if the member makes no new nomination.
*Expressman's Aid Society* v. *Lewis*, 9 Mo. App. 415; *Cooke
on Life Ins.*, pp. 19–20; *Joyce on Ins.*, vol. 2, 741 and 827;
*Masonic Mutual Rel. Ass.* v. *McAuley*, 2 Mackey (D. C.)
70; or as has been differently expressed there is a lapse.
*Bacon Benefit Soc.*, vol. 1, section 243; *Haskens* v. *Kendall*,
158 Mass. 220.

If the will of the testator controls this fund, it must do
so either because it bequeaths property belonging to the
testator, or because it constitutes a nomination in exercise

of the power of appointment in accordance with the by-laws. The executors, as executors, cannot claim, for this would subject the fund to the claims of creditors and divert it from the object of the society. The executors cannot claim that the will of the member is a new nomination, a declaration of trust, or an exercise of his power of appointment, for to so hold would be to disregard the by-laws. *Md. Mut. Ben. Soc.* v. *Clendinen*, 44 Md. 429; *Highland* v. *Highland,* 109 Ill. 366; *Hellenberg* v. *Dist. No. 1, &c., B'nai Berith,* 94 N. Y. 580.

Can the grandchildren, under the by-laws, share in the fund? It is submitted that by a proper construction of Article IV, of the by-laws, the words "to his widow and children"—there being a limitation over—designate a class of persons to take. The persons included take equally and in the event of the death of one the fund goes to the survivors of the class. Where a certificate provides that the benefit shall at the death of the insured be paid to his wife and children, such benefit is payable to the wife and children equally. They take by virtue of the contract and not by descent. *Felix* v. *Grand Lodge, &c.,* 31 Kan. 81; *Cragin* v. *Cragin,* 66 Me. 517; *Niblack,* page 399. That there is survivorship, see: *Brooklyn Masonic, &c.,* v. *Hanson,* 6 N. Y. Supp. 161; *Campbell* v. *Campbell,* 18 N. Y. 412.

It may be urged in behalf of the grandchildren that the "children" under the by-laws took vested interests that were transmissible, thus enabling the grandchildren to stand in the place of the deceased child or children. The answer to this position is that if the children took vested interests these interests were subject to be divested by the limitation expressed in the by-laws by which the parents of any deceased member are to take before the next of kin.

If it be argued that the word children includes grandchildren in order to carry out any supposed intendment of the by-laws and the supposed intention of the member, this Court, if it adopt such contention will reach a result differ-

ent from that reached in the construction of wills—where confessedly intention controls. *Demill* v. *Reid*, 71 Md. 175. " It may be laid down as a general rule that the word 'child ' does not embrace a grandchild. But to this rule there are two classes of cases which form exceptions; *first*, where the will or writing would otherwise be inoperative, or the manifest intention would be defeated; *second*, when the will or writing shows, by other words, that the word was not used in its ordinary and proper sense, but in a more extended sense." *Niblack*, page 561, sec. 188; *Duvall* v. *Goodson*, 79 Ky. 224, is a case that falls clearly within the first exception.

In *Windsor* v. *Odd Fellows*, *&c.*, 13 R. I. 150, and in *Lane* v. *DeMets*, 13 N. Y. Supp. 347, it is expressly held that the children take to the exclusion of the grandchildren. In the *Rhode Island case* it is said : " It is necessary to entitle the grandchildren to share, to say, first, that children includes grandchildren, and secondly, that the grandchildren do not take directly, and *per capita*, but only by representation." In *Continental Life Ins. Co.* v. *Palmer*, 42 Conn. 60, the wife insured the life of her husband; the policy was payable to the wife if she survive her husband; if not, to their children. The husband survived the wife and one of the children died during the life of the father, leaving issue. It was held that the issue took the interest to which the father would have been entitled, if he had survived the insured. In *Lane* v. *DeMets* (13 N. Y. Supp. 347), BRADY, J., after stating the rule that where a fund is given to a class, and there is a gift over it will go only to those of that class, says : " These views are not antagonistic to the decision in the case of the *Insurance Company* v. *Palmer*, 42 Conn. ——, in which it appeared that the wife insured the life of her husband for her sole and separate use, the sum, however, to be paid to the wife if living, and if not, to their children, inasmuch as there was no contingent limitation to the personal representatives of the hus-

band in case there should be no surviving children at the time of death."

SCHMUCKER, J., delivered the opinion of the Court.

John Q. A. Herring, late of Baltimore City, when he died, in February, 1897, was a member of the Expressmen's Mutual Benefit Association in which he held two certificates in the nature of life insurance policies securing the payment of $3,000 in all, at his death. The association was a purely mutual one, having no capital stock, and the only form of benefit which it provided was the payment of a specified sum of money at the death of the member, or the payment of a smaller sum in the event of his becoming totally disabled.

In consideration of this benefit the member paid to the association a stipulated monthly premium and also agreed to pay such assessments, if any, as might be made by the executive committee to make good any impairment of the reserve fund of the association, or to meet the requirements of the laws of New York, where it was incorporated. The benefits of the insurance were not limited to the family or relatives of the member, nor to any particular class of persons, but the assured had the right to designate any one as the beneficiary of his policy, and he could change the beneficiary at will with the assent of the association, and " if possible," of the beneficiary named in the policy. The designation and change of beneficiary were required to be made in writing upon the certificate of membership, and the names of the beneficiaries were registered on the books of the association. The by-laws provided for the distribution of the fund at the death of the member, in case he failed to designate any beneficiary, but they were silent as to who would be entitled to the fund if a designated beneficiary died in the lifetime of the member.

Mr. Herring upon his application for membership in the association designated his wife, Ann M. Herring, as the person to receive the insurance money at his death, and her

name was duly endorsed upon the certificates and entered upon the books of the association as the beneficiary. She would have been paid the entire fund in question if she had survived him, but she died about a year prior to his death. He made no attempt after her death to designate to the association or upon his certificates a new beneficiary, although he made a will in which he gave the residue of his estate, " including the insurance on my (his) life " to his two surviving children and the issue of his two deceased children in equal shares *per stirpes*.

After Mr. Herring's death the $3,000 due from the association was claimed, *first*, by his executor, *secondly*, by the administrator of his wife's estate, *thirdly*, by his two surviving children, and *fourthly*, the children of his two deceased children claimed to participate *per stirpes* in the distribution of the fund. The association being uncertain to which of the claimants to pay the fund, a special case stated to which the several claimants were parties was docketed in Circuit Court No. 2, of Baltimore City, under the provisions of General Equity Rule No. 47, to determine the question. A *pro forma* decree was passed in the case awarding the fund to the appellees, who are the surviving children of Mr. Herring, and the other claimants appealed therefrom.

It is conceded by all parties, that if this were a case of ordinary life insurance, the fund would be payable to Mrs. Herring's administrator, as the claim under the policy would in that event have by law devolved upon him. The material question, therefore, which the case presents, is whether the contract between Mr. Herring and the Expressmen's Mutual Benefit Association differs from an ordinary contract of life insurance to such an extent as to require the application of a different rule to the disposition of the proceeds of the contract, and if so, what rule is to govern their disposition?

Mutual benefit associations have in recent years become quite numerous, and have frequently been before the Courts

of this and other States in cases involving an inquiry into the nature of the organizations and the character of the contracts of insurance issued by them. The object of the insurance feature of these associations is generally to provide pecuniary compensation for the loss occasioned by the illness or death of their members. This compensation in some cases consists of a specific sum of money and in others it is made up of the proceeds of assessments which the society undertakes to collect from its members.

In many of the associations the persons who may become the beneficiaries of the insurance are strictly limited to the immediate family or near relatives of the insured member, while in others no restriction at all is placed upon those who may acquire the right to receive the amount due at the death of the member. Most of the companies permit the insured member to designate, in writing, generally upon the membership certificate, the person who is to receive its proceeds, and from time to time, with the assent of the association, to change the beneficiary, but others rigidly fix by their by-laws the persons who are entitled to receive the fund.

The Courts have uniformly held that the contract of membership is made with reference to the by-laws and regulations of the association, and these are treated as part of the contract. While the constitutions and by-laws of some associations are skillfully drawn and are not difficult of interpretation, others are loose in structure and their meaning is not clearly expressed. As might be expected, the interpretation of these varied contracts of mutual insurance and the determination of the rights of respective claimants to the funds arising from them, has resulted in a series of decisions in which there appears at first sight to be an unusual lack of harmony. Upon a close examination the apparent differences in the decisions are found to arise chiefly from the variety in the terms of the contracts, or in the structure and regulations of the associations themselves. There are, however, two lines of cases which differ in the

view taken by the Courts of these institutions as a class. In the one line the Courts are disposed to regard the contract of indemnity provided by the associations, at least in the event of the death of the member, as having all of the essential qualities of ordinary life insurance as furnished by the so-called Standard Mutual Companies. In the other line of cases mutual benefit associations are treated as entirely distinct in principle from life insurance companies and their respective contracts of indemnity are differently construed.

The decisions of this Court, in the cases in which it has been called upon to consider the nature and incidents of the indemnity afforded by these associations, are in harmony with the first of the two above-mentioned lines of cases. JUDGE MILLER, in delivering the opinion of this Court in *Goodman* v. *Jedidjah Lodge*, 67 Md. 128, says of the system of mutual or co-operative insurance provided by that lodge for its members, which much resembled the one now under consideration: "Under it a book of endowment certificates was furnished to each subordinate lodge, and one of these certificates was issued to each member; and it stipulated for the payment of $1,000 on his death to his widow and children, if he left any, and if not, then to a beneficiary to be designated by him, whose name must appear in the body of the instrument. Such certificates differ in no substantial point from ordinary life insurance policies issued by ordinary life insurance companies. The death dues and the contributions to the sinking fund are nothing more or less than premiums exacted, as in ordinary cases, by the payment of which the policies are kept alive. If an organization like this chooses to go into that kind of business it must expect that the Courts will deal with and adjudicate the rights of the policy-holders upon the same principles of equity and justice that apply in the usual and ordinary cases of life insurance contracts." This Court also had occasion in *Maryland Mutual Benevolent Society* v. *Clendinen*, 44 Md. 429, to consider the character

of the life insurance effected by means of membership in a mutual benefit association, and more especially to determine the nature and extent of the interest of the member himself whose life was insured in the proceeds of the policy. In that case the by-laws of the association provided that upon the death of a member leaving no widow or child the insurance should be payable to such person as the deceased should have disposed of it by will or assignment. The member died without widow or children, but left a will giving "the entire residue" of his estate, without mentioning the life insurance, to his sisters. The administrator, *c. t. a.*, of the deceased member, claimed that the insurance money passed under the will, but the Court held that the will did not operate upon it, because, as the insurance was not payable to the deceased or to his own benefit, it was not his property, and did not go as assets to his administrator. The Court also held that the deceased had no estate in the insurance but merely possessed a power of disposition over it, and as there was no reference in his will to the power or to the subject of it, and there was other property upon which the will operated, the insurance money did not pass under the will.

In *Yoe* v. *The Howard Mutual Benevolent Association*, 63 Md. 91, CHIEF JUSTICE ALVEY, in delivering the opinion of the Court, says: " These associations are of a beneficial character, and have for their general purpose mutual aid and protection for the families of deceased members,   *   *   *. *The certificate of membership is analogous to the ordinary policy issued by a mutual life insurance company*, and the Courts have, as MR. MAY says, with great uniformity treated these associations as substantially life insurance companies, *applying to them and to the virtual relatives of the members the rules and principles applicable to the contract of life insurance."     May on Insurance*, sec. 550a and cases there cited.

The case of *Cowman* v. *Rogers*, 73 Md. 403, presented the following facts:   Walter E. Hoopes was in his lifetime

a member of the Order of the Golden Chain, a beneficial association, and his certificate was payable on his death to his wife. The regulations of the society in that case, unlike those of the one in the case at bar, provided for the event of the death of the beneficiary in the lifetime of the member, and the failure on his part to designate another beneficiary, in which event they required the fund to be paid to his widow, children, &c., &c. Hoopes, together ·with his wife and children, perished in the great flood which occurred at Johnstown, Pa. Upon a bill of interpleader, filed by the association to determine the proper disposition of the insurance fund, this Court held, CHIEF JUSTICE McSHERRY writing the opinion, that it would be presumed that all of the family perished simultaneously, and as the wife was the beneficiary named in the certificate, her representative had a *prima facie title to the fund,* which could only be divested by evidence showing that she had died before her husband, and there being no such evidence the fund was awarded to her representative.

*Cooke on Life Insurance,* sec. 76, treats the interest of the beneficiary under an insurance contract of this kind as a valuable interest which is irrevocable in him during his life, and in his representatives after his death, so that it cannot be divested without their consent, unless it is made revocable by the terms of the contract, and he holds that even in that event, so long as the power of revocation is not exercised, there seems to be no valid reason why the rule should not apply. *Joyce on Insurance,* in sec. 741, says, the right of a member to change his beneficiary arises not from the character of the association, but from the contract between the parties.

Applying the principles asserted by the Maryland decisions to the appeals now under consideration, we arrive at the conclusion that the executor of J. Q. A. Herring, the deceased member, is not entitled to the fund in Court, because his testator had no property in the policy or its proceeds, but had only a power to designate, and from time to

time change, in the manner prescribed by the by-laws of the association, the person entitled to receive such proceeds when they became due. This power was not assets in his hands, and did not pass on his death to his executor, who, therefore, has no claim upon the fund in controversy.

The designation by Mr Herring of his wife, Ann M. Herring, as his beneficiary, when he joined the association, conferred upon her the beneficial interest in the proceeds of the policy when due. The estate thus acquired by her in the insurance and its proceeds, although it was liable to have been defeated by the appointment of a new beneficiary by her husband if he had made the new appointment, possessed the inherent qualities of the estate of a beneficiary under an ordinary policy of life insurance, and was a valuable asset, which at her death devolved upon her administrator. The title of the administrator would have been divested after her death if the husband had in his lifetime designated a new beneficiary in the manner prescribed by the by-laws of the association, but as he did not do so, the title to the fund in controversy is still in Mrs. Herring's administrator, and the Court below erred in not awarding it to him. It follows, from what we have said, that neither the children nor grandchildren of Mr. Herring are entitled to the fund in their own right, but they will practically derive the benefit of it in the due course of distribution of their mother's estate.

The decree appealed from will be reversed, and the case remanded, to the end that a decree may be passed in accordance with this opinion. The costs in both Courts should be allowed out of the fund.

*Decree reversed and cause remanded.*

(Decided June 20th, 1899).