ELIZABETH J. LITTLETON *vs.* WELLS AND Mc-COMAS COUNCIL, NO. 14, JR. O. U. A. M.

*Suit Against Unincorporated Association—Declaration in Assumpsit— Benefit Societies—Reasonableness of By-Law—Payment of Dues to Member Not Authorized to Collect—Waiver of By-Law Relating to Non-Payment of Dues—When Money Collected by Subordinate Council on Account of Death of Member is Equitably Payable to Beneficiary.*

A voluntary, unincorporated association is liable to suit under Code, Art. 23, sec. 301, which provides that it shall be sufficient in any suit, pleading or process by or against any joint stock company or association to describe the same by the name or title by which it is commonly known, or by or under which its business is transacted.

This statute does not take away the common law right to sue the members of an unincorporated association, but the creditor has the right to sue either the association or the members, and when the suit is against the former, a judgment therein can affect only its joint property.

Code, Art. 75, sec. 23, provides that the words "for money payable by the defendant to the plaintiff" should precede the common counts in *assumpsit.* The declaration in this case set forth that the plaintiff sued the defendant "for money payable to the plaintiff for money had and received by the defendant for the use of the plaintiff." *Held,* that this declaration is good on demurrer since it is necessarily implied that the money was payable by the defendant.

A by-law of a benefit society is not unreasonable which provides that "no brother owing thirteen weeks or more dues shall be entitled to receive weekly or death benefits until thirteen weeks after paying all arrears."

When a member of a benefit society gives to an officer of the society the money wherewith to pay his dues, such officer not being authorized to collect dues, then the latter is the agent of the member and payment is not made to the society until the money is given to the proper officer.

Certain funeral benefit associations were composed of different "councils" of the same order, and the by-laws provided for the payment to a council of funeral benefits upon the death of a member of a council upon receipt of a certificate that the member's name was then upon the roll in good standing. One L. was a member of a council of this order whose by-law provided that no member owing thirteen weeks or more dues should be entitled to receive death benefits until thirteen weeks after payment of arrears. Money wherewith to pay L's dues was given to another member of the council upon the latter's promising to pay the same to the officer authorized to receive it. This member neglected to make such payment for some weeks and L's death occurred less than thirteen weeks after his arrears had been paid. The council collected a certain sum from two funeral benefit associations as being due on account of L's death while a member in good standing, but the council refused to pay the same to the beneficiary named in L's certificate of membership. L had not been suspended as a member and no notice that he was in arrears had been given him as required by the constitution of the council. *Held*, that the council could waive any right it had to take advantage of the above mentioned by-law and could treat L as a member in good standing at the time of his death, and since the council had collected the money from the funeral benefit associations on the assumption that L was in good standing, and the money was paid to the council for the use of L's beneficiary, the latter is entitled to recover the same from the council.

Appeal from the Court of Common Pleas (HARLAN, C. J.)

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, BOYD, SCHMUCKER and JONES, JJ.

*Ernest M. Gibbons* and *W. Calvin Chesnut*, for the appellant.

*Richard S. Culbreth* and *W. Harry Holmes*, for the appellee.

BOYD, J., delivered the opinion of the Court.

This suit was instituted by the appellant against the appellee, which is alleged to be "an unincorporated voluntary Fraternal Beneficial Association duly organized and doing business in the State of Maryland." The appellant claims that she is entitled, as the mother of John M. Littleton, to recover the sum of $500.00 by reason of the death of her son. It is conceded that he was a member of this order and that he was killed in an accident on the Baltimore & Ohio Railroad

on December 15th, 1900, but it is contended that by reason of certain provisions in the constitution and by-laws of the order he was not entitled to more than thirty dollars death benefits, for reasons that will be hereafter stated. A demurrer was filed to the declaration on the ground that the suit could not be maintained, on account of the fact that the defendant was unincorporated, as is disclosed in the declaration. The demurrer was overruled, but being thus presented it is proper that we first dispose of that question.

1. An unincorporated society or association was regarded at common law as a partnership, so far as its rights and liabilities were concerned, and suits could not be maintained by or against it in the name of the society or association, but the members composing it were the proper parties. It was held in *Mears et al.* v. *Moulton et al.*, 30 Md. 142, that the members of a voluntary unincorporated association, were entitled, as individuals having a common interest, to sue in regard to matters pertaining to or affecting their interests. Sec. 301 of Art. 23 of the Code (being sec. 215 of ch. 471 of the Act of 1868) provides that "It shall be sufficient in any suit, pleading or process, either at law or in equity, or before any Justice of the Peace, by or against any joint stock company or association, to describe the said joint stock company or association by the name or title by which it is commonly known, or by or under which its business is transacted." In *Powhatan Steamboat Co.* v. *Potomac Steamboat Co.*, 36 Md. 238, a motion was made to set aside a judgment of condemnation which had been obtained by the Potomac Steamboat Company, under an attachment proceeding, and the fourth reason assigned for setting it aside was that it did not appear in the proceedings that the company was a corporation, and a private partnership could not maintain a suit, except in the names of the individual parties. BARTOL, C. J., in delivering the opinion of this Court quoted the above statute and said : "This provision is a sufficient answer to the fourth reason or cause assigned in support of the motion." In 22 *Ency. Pl. & Pr.*, 228, there is an excellent article on "Unincorporated Societies," where many au-

thorities are collected and the statutes of different States referred to. From an examination of them it will be seen that the provisions of the statutes differ as to how such suits shall be brought—some providing that they shall be against the officers of the association, others against the associations by the names by which they are generally known or under which they carry on business, as our statute does. Such suits have been sustained in this State, as will be seen by reference to the late case of *Schlosser* v. *Grand Lodge*, 94 Md. 362. The question was not discussed there but this Court reversed the judgment recovered in favor of "a foreign unincorporated voluntary beneficial association doing business within the State of Maryland," and awarded a new trial, which would have been useless unless the association could be sued. The statute does not take away the right existing at common law to sue the members of an unincorporated association, but the creditor has the option to sue either the association or the members, and when the suit is against the former a judgment obtained can only affect its joint property. The personal liability is ordinarily sufficient to induce members of such societies or associations to become incorporated, as in some cases the failure to do so might result in serious consequences to the members, and even if they be not liable as partners *inter sese* on the principles announced in *Cannon* v. *Brush Electric Company*, 96 Md. 469, they may be responsible to creditors. We are of the opinion then that under the statute above quoted, and secs. 143E, etc., of Art. 23, regulating "Fraternal Beneficiary Societies, Orders or Associations" a beneficiary can sue such a lodge as the appellee, in the name by which it is commonly known, without suing the individual members.

2. Another technical question that is raised is whether the first count in the declaration is a good one. The plaintiff sues the defendant "1. For money payable to the plaintiff. For money had and received by the defendant for the use of the plaintiff." In *Merryman* v. *Rider*, 34 Md. 98, it was held that the omission in a declaration of the averment "For money payable by the defendant to the plaintiff" as a prefix to the

counts "For goods bargained and sold," ete., "For work and labor," etc., "For money had and received," etc., was fatal on demurrer —— the Code (now Art. 75, sec. 23), providing that "These words 'money payable,' etc., should precede money counts like the 1st to the 13th inclusive, but need only be inserted in the 1st." The Court cited *Place* v. *Potts*, 8 Exch. 705, where PARKE, B., said the declaration was bad on general demurrer, and that it ought to have averred that the debt was a money debt, and that it was payable before the commencement of the suit." The case was distinguished from that of *Fagg* v. *Mudd*, 25 E. L. and Eq. Rep. 224, where it was held that the omission of these words was not fatal to a count "for money found to be due from the defendant to the plaintiff on accounts stated between them," —— this Court saying "The demurrer was overruled in that case, because said LORD CAMPBELL, C. J., 'the account being stated, and money found to be due, it was instantly payable, and therefore there is only the omission of that which the law would imply and the form is consequently substantially framed," In *Scott* v. *Leary*, 34 Md. 401, this Court said that a count similar to that in *Fagg* v. *Mudd*, was good, although that count is one of those embraced by the statute above quoted, which requires them to be preceded by "money payable," etc. To strictly follow the language of the statute, this count should have been "for money payable *by the defendant* to the plaintiff," etc., but when the plaintiff sues the defendant "For money payable to the plaintiff. For money had and received by the defendant for the use of the plaintiff," it is not only implied, but in effect stated that it was payable *by the defendant.* No one can read that count without knowing that it meant to say that the money was payable by the defendant, and to strike it down for such an omission would be giving an extremely technical objection more effect than our present system of pleading cnntemplates. The forms of conveyances prescribed in our Code provide for the name of the grantee in the granting clause, but in *Bay* v. *Posner*, 78 Md. 47, the omission of the name of the grantee in that clause was held

not to invalidate the deed, when it appeared from other parts of it who the grantee was intended to be.    The demurrer was to the whole *narr.*, and not to each count, and if the attention of counsel had been directed to this omission in the Court below, it could easily have been corrected, and that is another reason for not sustaining the demurrer, but independent of that we deem the count sufficient.

3.  The principal questions involved arise under the following sections of Art. IV.of the by-laws of the defendant:  Sec. 1.  "Every member of this Council shall pay eight dollars and sixty cents per annum as dues, payable weekly, and such further assessments as may from time to time be imposed by a two-thirds vote of the Council," etc.    Sec. 2.  "It shall be the duty of each member to pay his dues, levies and fines, on or before the last meeting night in each quarter, and *no brother owing thirteen weeks or more dues shall be entitled to receive weekly or death benefits until thirteen weeks after paying all arrears.*"    Sec. 3.  "Should any member suffer his account to remain unpaid for thirteen weeks, he shall forfeit all the rights and privileges, except that of being admitted into the council chamber, and funeral ceremony in case of death, and if allowed to remain unpaid twenty-six weeks, he shall be suspended from the order."    John M. Littleton paid his dues for the quarter ending the 27th of June, 1900, and on September 26th, his sister gave Dr. Groshans, who was a member and the physician of the lodge, the dues that were payable for the quarter ending on that date.    They lived a long distance from where the lodge met.    She said "when she paid the money to Dr. Groshans he said it would be all right.    She had paid other dues to him and the lodge always issued a receipt."    The Financial Secretary testified that he had no certain knowledge when Littleton's last dues were paid, except by the entries on his book, which showed it to be October 10th, 1900, and a receipt for them offered in evidence bore the same date.    Littleton was accidentally killed on December 15th, while at work as a brakeman on the Baltimore & Ohio Railroad.    There was no further payment due until

December 26th.   It will be observed that Littleton was killed within the thirteen weeks after September 26th, when thirteen weeks of dues became payable, and the appellee contends that under sec. 2 of the by-laws above quoted he had forfeited his right to death benefits until the expiration of thirteen weeks after October 10th.

The appellant sought to avoid the effect of this by-law by showing that the council had by its course of dealing practically constituted Dr. Groshans a collecting agent, and that hence payment to him on September 26th, was payment to the council.   Under the constitution it was the duty of the Financial Secretary to receive all money for the council.   That officer admitted that he had received dues quite frequently from Dr. Groshans, but he denied that the doctor had to his knowledge "collected" any dues from members.    The appellant asked him, "Have you been in the habit of accepting dues of various members of the council, which dues have been collected from the several members by this Dr. Groshans, and brought by him to the lodge and paid?"   An objection to that question was sustained by the Court and that ruling is embraced in the first bill of exceptions.   We think there was no error committed by the Court in so ruling. There was no evidence that Dr. Groshans had any authority to collect dues for the order, and conceding all that the testimony tends to show on that point, it amounts to nothing more than that some of the members gave their dues to Dr. Groshans to be paid to the Financial Secretary.   It might very well happen that members living at a distance would give him, or some other member who expected to attend the meetings of the lodge, their dues to be paid to the Secretary, but it was not payment to the council until paid to the proper officer. Payment to Dr. Groshans was of no more effect than payment to any other member, and he was the agent of the member giving him the money and not of the council, and hence a member so paying him took the risk of the dues not being paid by the time required by the by-law.

4. At the conclusion of the plaintiff's testimony, the de-

fendant offered two prayers which were granted. The first instructed the jury that there was no evidence legally sufficient to entitle the plaintiff to recover more than thirty dollaas, and the verdict must be for the plaintiff for that sum. The second instructed them that the burden was on the plaintiff to show that her son was in good standing in the defendant council at the time of his death, and that the plaintiff had offered no evidence legally sufficient to prove that, and the verdict could not be for more than thirty dollars. That sum is fixed by sec. 3 of Art. 5 of the by-laws, which after fixing the amount of death benefits to be paid to those entitled to them, provides that "In case of the death of a non-beneficial member there shall be allowed the sum of thirty dollars."

The appellant contends :

(*a*) That the plaintiff's son was a beneficial member at the time of his death, and that the by-law set forth in sec. 2 of Art. 4 is unreasonable and void, as against the plaintiff.

(*b*) That under the first count the sum of five hundred dollars collected by the defendant from the two Funeral Benefit Associations was money collected by it for the use of the plaintiff, which *ex æquo et bono* it ought to pay over to the plaintiff.

(*a*) Sec. 2 of Art. 4 of the by-laws is too plain to admit of any question as to its meaning, where it says *"no brother owing thirteen weeks or more dues, shall be entitled to receive weekly or death benefits until thirteen weeke after paying all arrears,"* and the question to be determined is whether it is so unreasonable as to make it void. This order doubtless has many thousand members and amongst them there are probably some who would not pay their dues promptly unless there be some penalty for their failure to do so, which will be effective. In *Yoe* v. *Howard Mut. Benevolent Association*, 63 Md. 86, this Court, through ALVEY, C. J., in speaking of such associations said : "Indeed, without the same strictness and punctuality observed by insurance companies, such associations could not subsist. If the obligations of members were not insisted on with strictness; the whole object of the association would be liable at

any time to be frustrated, for if one member could be indulged beyond the limits prescribed by the articles of the association, each and every one of them could claim similar indulgence and the consequence might be an entire disappointment in the benefits to be received.   To obviate such possible consequences, and to effectuate the objects of the association, the obligations of members are required to be enforced with strictness."   In this State it has been determined that insurance of this kind is substantially like that of ordinary life insurance, as will be seen by reference to *Goodman* v. *Jedidjah Lodge*, 67 Md. 117; *Thomas* v. *Cochran*, 89 Md. 402, and other cases, and we have frequently held that members of such mutual associations are bound by their by-laws.   *Anacosta Tribe* v. *Murbach*, 13 Md. 91; *Osceola Tribe* v. *Schmidt*, 57 Md. 98, and *Weigand* v. *Fraternities Accident Order*, 97 Md. 443.   We do not think therefore that the appellant can recover on the theory that this by-law is unreasonable and therefore must be stricken down.   We have been referred to some cases in New York which have taken a contrary view. *Cartan* v. *Father Matthew United Benevolent Society*, 3 Daly, 20; *Brady* v. *Coachman's Benevolent Association*, 14 N. Y. Sup. 272; *Buecking* v. *Robert Blume Lodge*, 1 City Court Rep. 51; *Nelligan* v. *N. Y. Typo. Union*, 2 City Court Rep. 261. They were not decided by the Court of Appeals of that State, and although they were determined by Judges whose opinions are entitled to great respect, we cannot agree with the conclusions reached by them, especially in view of the position taken by this Court and our predecessors in reference to such associations.   It must be remembered, too, that in those cases the Courts were dealing with incorporated bodies, and apparently at least some decisions in New York hold that by-laws of unincorporated associations are binding on their members, whether reasonable or not.   *Elsas* v. *Alford*, 1 N. Y. City Court, 123; *Kehlenbech* v. *Logeman*, 10 Daly, 447; *Bacon on Ben. Soc. and Life Ins.*, sec. 89.   But whether that be so or not, we do not think the by-law relied on in this case is so unreasonable as to justify us in striking it down.

(*b*) The only remaining question it is necessary to consider is whether the appellant can recover under the first count of the declaration for the money received by the appellee from the Funeral Benefit Associations.    It will be sufficient for our purposes to recall that "This count is commonly said to be equally remedial with a bill in equity, and, in general terms, lies whenever the defendant has obtained possession of money which, in equity and good conscience, he ought not to be allowed to retain."    1 *Poe*, sec. 117.    The Financial Secretary testified that "·The lodge formally notified the Death Benefit Associations of the death of John M. Littleton," and they "remitted to him as Financial Secretary the sum of five hundred dollars on account of the death of John M. Littleton." He received $250.00 from each of them in January, 1901,—— the one being the Junior American Mechanics' Funeral Benefit Association, and the other the Eastern Funeral Benefit Association.    Although the names seem to be somewhat different from those mentioned in the evidence, we were given the laws, etc., of those two and understand them to be those intended.    Sec. 2 of Art. 1 of the laws of the first mentioned reads "The object .of this association shall be to establish a fund for the payment of funeral benefits *to those entitled to receive them* under the conditions as defined in the following laws: "    That association is composed of councils of the Junior Order of United American Mechanics, and a form of application is given in the laws, which amongst other things, contains the following : "We have adopted a by-law providing for the payment of the funeral benefits of a deceased brother in conformity with the laws of the Jr. O. U. A. M., irrespective of the time of mem-. bership of the said brother, the full amount received from the Jr. A. M. Funeral Benefit Association of the United States, less the cost of the claim and all other charges legally due the council at the time of death, provided he is in good standing." A roll of membership of each council is required to be kept and furnished the association and in case of suspension, expulsion, withdrawal or death of a member, the secretary of the council is required to notify the association and his name is

stricken off.   Assessments are made for "every member upon
the roll of each council on the first day of the month in which
the assessment is made."    Upon the death of any member of
a council holding membership in the association, the secre-
tary of the council forwards the application for payment to the
Secretary of the Funeral Benefit Association, who certifies to
the committee on benefits that the council is in good standing,
*that the member's name is upon the roll*, etc.    "Upon the death
of a member of a council in good standing, in this association
the council shall receive the following sums *in accordance with
the time of enrollment of said member upon the books of the as-
sociation.*"

The same general features are in the other association.  Art.
12 of its by-laws provides that "Upon the death of a member
of this association, *whose name shall appear upon the roll in
good standing*, and the proof of death is .found satisfactory,
there shall be paid to the council of which the deceased was
a member, or the beneficiaries of such deceased member, if his
council does not belong to this association, within sixty days
from the issuing of an assessment thereon, *such death benefits
as he may be entitled to* under Art. IX."    The amount of death
benefits depends upon the number of members, Art. IX, pro-
viding that "Said membership to be determined by the *num-
ber of members* of councils in good standing and *members upon
the roll* of this association *at the date of death.*"    Sec. 2 of
Art. XII, provides that "Each council which shall have
joined this association shall have the right to regulate the
amount to be paid to the heirs or dependents of any member,
who is not in good  standing or in arrears at the time of his
death, by such by-laws as said council may from time to time
adopt."

There would seem to be no question that it was contem-
plated that the death benefits received from these associations
should be paid, through the councils holding membership in
them, to the beneficiaries of the deceased members.   It is
equally clear that the members of councils belonging to the
associations are treated as members or at least *quasi* members

of the associations.   Art. XII of the eastern association
in so many words speaks of them as such—"*Upon the death
of a member* of this association," etc.,—and there is no
room to question that proposition so far as *it* is concerned.
In the other association it does not so clearly appear but there
is enough to show that the members of the councils are at
least in a qualified sense regarded as members or *quasi* mem-
bers of the association.   Except for the provision in the laws
of the associations as to members being "in good standing,"
it would be difficult to understand how the appellees could
question the right of the appellant to the money actually re-
ceived by it on account of the death of John M. Littleton.
Our statutes and the decisions of this Court have given these
benevolent societies great latitude and extraordinary powers
over their members, on the theory that they are useful, bene-
ficial and benevolent, but it is contrary to every principle upon
which they are supposed to be founded to think of their profit-
ing by the death of their members.   It may, and sometimes
does occur, that they are excused from paying death benefits
out of their treasury on account of some default of the mem-
bers, which seems to work a hardship in individual cases, but
it is necessary and proper that they be sustained for the gen-
eral good of the members and to avoid fraud or imposition on
the orders.   But when an order takes the position that a de-
ceased member held such a relation to it as to entitle it to de-
mand payment of death benefits from a funeral benefit asso-
ciation, by reason of his death, and at the same time says that
that relation of the member to it was such as to deprive his
beneficiaries of those death benefits, it behooves a Court of
justice to give very close scrutiny to by-laws, or other rules,
that might work such results before giving its sanction to them.
Take Art. XII of the by-laws of the eastern association as a
test of the right of the appellee to demand death benefits of
it, and we find that it makes, as a condition precedent, of
such right of the council to them, that the member's "*name
shall appear upon the roll in good standing.*"   If he is not in
good standing, it is clearly the duty of the council to so in-

form the Funeral Benefit Association, and he either *is* or *is not*. If he is not, then the council is not entitled to the benefits provided by Art. IX of the eastern association's by-laws, and if he is, so as to entitle the council to demand it, upon what principle of justice or ordinary fair dealing between man and man (to say nothing of the relation of brotherhood) should it be permitted to say that "Littleton was in such good standing as to enable us to collect the benefits, but was not in such as to require us to pay them over to his beneficiary." Sec. 2 of Art. XII quoted above cannot excuse the payment, for that must mean that if a council does so regulate the amount to be paid, in case the member is "not in good standing or in arrears," etc., the association should be so informed and only required to pay the amount so fixed. Any other construction would not be tolerated by the law. It would be contrary to the policy of the laws of this State in dealing with beneficial societies to permit one of them to thus profit by the application of technical rules, and thus prevent the outgoing of money that came into its treasury through a liberal construction of the very terms now relied on.

The use of the term "in good standing" is very common with such societies, but it is not always easy to determine its precise meaning in the connection in which it is used. If John M. Littleton had been told just before he met with the accident which resulted in his death that he was not in good standing in this council, he would doubtless have been very much surprised, for it is not claimed that either he or his sister, who paid his dues to Dr. Groshans on the day they were payable, was ever informed they had not been received in time by the lodge. When he died, he was not in arrears, for although sec. 1 of Art. IV of the by-laws says the dues shall be "payable weekly," the next section is "It shall be the duty of each member to pay his dues, levies and fines, on or before the last meeting night in each quarter," and in the early part of December the Secretary had mailed the usual notice of the quarter's dues, which were to be payable December 26th. There is no evidence that any step had been taken

(prior to October 10th, when his last dues were paid) to suspend him, and no notice had been given him that he was in arrears, although sec. 6 of Art. VII of the Constitution requires the Financial Secretary to "notify all members in arrears to the council to the amount of thirteen weeks' dues." Under the general laws of the order a subordinate council cannot suspend a member for non-payment of dues until after two weeks' notice (Laws XXV) and under Art. XIII of the Constitution two weeks' grace is allowed a member before suspension. . So Littleton cannot be said not to have been "in good standing" at the time of his death by reason of anything he was then under obligations to do, but, if at all, merely because one of the officers of the council, Dr. Groshans, for some reasons not explained in the record, had failed to pay over the dues given him on the night of September 26th, as he had promised he would do. In short he was suffering the penalty prescribed because, without his knowledge, a brother member and an officer of the lodge neglected to turn over the dues given to him for that purpose. Under these circumstances there certainly can be no reason why the council could not waive any technical right it had to take advantage of sec. 2 of Art. IV of the by-laws, and to treat him as in good standing, whether technically so or not. As we think the appellee was only entitled to collect from the Funeral Benefit Association the money paid by them by reason of the death of Littleton, on the theory and assumption that he was in good standing when he died ; and as we are satisfied that under a proper interpretation of the rules the money was intended to be paid to the council for the use of Littleton's beneficiary and was actually so paid, we are of the opinion that the appellee by thus accepting the money has admitted, and therefore there was evidence, that Littleton was in good standing, and the appellant could recover on the first count, even if she could not under the second (which we need not discuss), the amount paid to the appellee by the two associations, after deducting all costs and expenses, if any, connected therewith, and all charges legally due the council by Littleton at the time of his death.

We might refer to other provisions of the laws such as sec. 3 of Art. V of the by-laws of the appellee, which expressly refers to the fact that it is a member of the two associations, as further evidence of the payments made by them being for the use of the beneficiaries and to show how the appellee may have profited by retaining the name of Littleton on its roll of members. The amount to be paid depends upon the number of members—for example if the membership is from two thousand to twenty-five hundred, the sum of one hundred and sixty dollars is paid; if twenty-five hundred or more, the sum of two hundred and fifty dollars is paid—thus showing the difference in payment that one member might make. But we will refrain from further reference to the facts, excepting to say that the point made by the appellee that the evidence does not show that the appellant is the beneficiary of Littleton is not well taken—especially as its prayers in effect concede that she is, when they admit her right to the thirty dollars.

It is only necessary to say of the cases of *McClenaghen* v. *Cincinnatus Council*, 20 Pa. Sup. Ct. Rep. 229, and *Hummer* v. *Roseville Council, Jr. O. U. A. M.*, 7 Pa. Dist. Ct. 258, cited by the appellee, that in so far as they are in conflict with what we have said, we cannot follow them. In the case of *Taylor* v. *Pettee*, 70 N. H. 38, s. c. 47 Atl. Rep. 733, the beneficiary was permitted to recover in *assumpsit* the amount received by a lodge of this order from a Funeral Benefit Association although at the time of the death of the member he owed the council dues for eighteen months. It was there said "The money having been paid to the Treasurer as the 'funeral benefit' of the deceased, the defendants are bound to account therefor to the representatives of his estate." That case goes further than we are called upon to do, but the general principles there announced are founded on justice and a correct view of what should be required of those receiving money under such circumstances as these sums were received.

For error of the Court below in granting these prayers, the judgment must be reversed.

*Judgment reversed and new trial awarded, the appellee to pay the costs.*

(Decided January 12th, 1904.)