Zimmerman, J.
In the cases of Koogler et al., Trustees, v. Koogler (1933), 127 Ohio St., 57, 186 N. E., 725; State v. Fremont Lodge of Loyal Order of Moose (1949), 151 Ohio St., 19, 84 N. E. (2d), 498; and Damm v. Elyria Lodge No. 465, B. P. O. E. (1952), 158 Ohio St., 107, 107 N. E. (2d), 337, it was either indicated or held that, since a voluntary unincorporated association had no status as a legal entity, an action against it as such would not lie, and that ordinarily any action had to be brought against the individual members of such an association collectively and conjointly.
Or stating it in another way, “In the absence of an enabling statute, a voluntary association cannot be sued by its association name. It has no legal existence, and the persons composing it must be joined individually.” Kimball v. Lower Columbia Fire Assn., 67 Ore., 249, 252, 135 P., 877, 878. See, also, United Mine Workers of America v. Coronado Coal Co., 259 U. S., 344, 385, 66 L. Ed., 975, 984, 42 S. Ct., 570, 574, 27 A. L. R., 762, 771.
Then, effective on September 30,1955, the General Assembly enacted legislation which is now Sections 1745.01 through 1745.04, Revised Code. Section 1745.01 provides:
“Any unincorporated association may contract or sue in behalf of those who are members and, in its own behalf, be sued as an entity under the name by which it is commonly known and called.”
Section 1745.02 reads:
“All assets, property, funds, and any right or interest, at law or in equity, of such unincorporated association shall be subject to judgment, execution and other process. A money judgment against such unincorporated association shall be enforced only against the association as an entity and shall not be enforceable against the property of an individual member of such association.”
Section 1745.03 covers the service of summons on an unincorporated association, and Section 1745.04 states that a change in the officers or members of such an association shall not abate any cause of action against it.
Ordinarily, it is for the Legislature to determine who may sue or be sued so long as it does not interfere with vested *334 rights, deny any remedy, or transgress constitutional inhibitions. As a general rule, every state has control over the remedies it offers litigants in its courts. It may give a new and additional remedy as to a right or equity already in‘existence and it may abolish old remedies and substitute new. United States Heater Co. v. Iron Molders’ Union of North America, 129 Mich., 354, 363, 88 N. W., 889, 893; 16 Corpus Juris Secundum, 514, Constitutional Law, Section 128; 10 Ohio Jurisprudence (2d), 329, Section 251.
In the early case of Darling v. Peck, 15 Ohio, 65, 72, the following statement appears:
“Where a statute gives a new remedy without impairing or denying one already known to the law, the rule is, to consider it as cumulative, allowing either the new or the old remedy to be pursued at the option of the party seeking redress.” To like effect are Feuchter v. Keyl, 48 Ohio St., 357, 27 N. E., 860; and City of Zanesville v. Fannan, 53 Ohio St., 605, 42 N. E., 703, 53 Am. St. Rep., 664.
Is it the purpose and intent of the statutes quoted and referred to above to limit actions solely against unincorporated associations as entities in the names they commonly use, as determined by the two lower courts herein, or may the individual members of such associations still be sued as under the former practice? We think the new statutes are no more than cumulative and do not abrogate the right to sue the members of the associations if the suitor chooses to proceed in that way. It is to be noted that Section 1745.01, Revised Code, uses the permissive word, “may,” and that, under Section 1745.02, Revised Code, when a suitor does take advantage of the enabling statutes by suing an unincorporated association by the name it uses, the collection of any judgment obtained against such association must be satisfied out of its property alone and the property of its members is immune from seizure. Surely, had the General Assembly intended to eliminate actions against the individuals composing an unincorporated association, it would have so expressed itself.
That statutes like Section 1745.01 et seq., Revised Code, represent an alternative mode of procedure appears to be the established rule. Thus, in 7 Corpus Juris Secundum, 91, Associations, Section 36, the following statement is made:
*335 “It has been said that it is only by virtue of statute that an unincorporated association may be sued as an entity. In some states statutes have been enacted which expressly or impliedly authorize the bringing of actions against unincorporated associations in their common name * *
And at page 92, ibid., it is stated that such statutes do “not take away the right previously existing at common law. The individuals composing such an association do not, by force of such statutes, acquire any immunity from individual liability, and it is optional with a creditor to sue either the association as such or the individuals composing it.”
See, also, Littleton v. Wells & McComas Council, No. 14, Jr. O. U. A. M., 98 Md., 453, 456, 56 A., 798, 799, and Jenkinson v. Wysner, 125 Mich., 89, 90, 83 N. W., 1012, 1013.
And Sperry Products, Inc., v. Association of American Railroads (C. C. A., 2), 132 F. (2d), 408, 145 A. L. R., 694 (certiorari denied, 319 U. S., 744, 87 L. Ed., 1700, 63 S. Ct., 1031), is authority for the proposition that, notwithstanding an unincorporated association may be sued as such, the common-law rule that liability for its torts may be asserted against the members still prevails.
An interesting case is that of Davison v. Holden, 55 Conn., 103, 10 A., 515, 3 Am. St. Rep., 40. There, suit and recovery were sanctioned against two officer-members of an unincorporated commercial association for debts incurred on behalf of the association in making purchases of merchandise incident to its business. The second paragraph of the syllabus of that case reads:
“A statute (Gen. Statutes, p. 417, sec. 7,) provides that ‘any number, of persons associated and known by some distinguishing name may sue and be sued and plead and be impleaded by such name.’ And another statute (Gen. Statutes, p. 403, sec. 9,) provides that the individual property of the members of such an association shall not be liable to attachment or levy of execution in a suit brought against the association as such. Held that the individuals composing such an association do not acquire by force of these statutes any immunity from individual liability, and that it is optional with a creditor to bring a suit against the association as such or the *336 individuals composing it, the only difference being that in the former case he can levy only on the property of the association.”
However, a recognized difference exists between an unincorporated association organized for the transaction of business and one organized for fraternal or social purposes. This is illustrated in Azzolina v. Order of the Sons of Italy, Conte Luigi Cadorna, No. 440, 119 Conn., 681, 691, 179 A., 201, 204, where it is stated in the opinion:
“In the case of a voluntary association formed for the purpose of engaging in business and making profits, its members are liable, as partners, to third persons upon contracts which are within its scope and are entered into with actual or apparent authority, and a joint judgment against them is justified. * * * But when, as here, the purpose of the association is not business or profit, the liability, if any, of its members is not in its nature that of partners but that arising out of the relation of principal and agent, and only those members who authorize or subsequently ratify an obligation are liable on account of it.”
The same principle is recognized in relation to torts. In Thomas, Potentate, v. Dunne, 131 Colo., 20, 30, 279 P. (2d), 427, 432, the following language is found in the course of the opinion:
“We cannot subscribe to the proposition that one who becomes a member of an unincorporated association such as a fraternal organization, a veterans organization, or any one of numerous other societies which might be mentioned, subjects himself to liability for injuries sustained in ceremonies held under the auspices of that organization, in the absence of any allegation in the complaint against him that he took an active part in the act resulting in the injury or in some manner had knowledge of the proposed initiation rites or ‘stunts’ to be employed and gave assent or encouragement to the use thereof.”
Compare Cox v. Government Employees Ins. Co. (C. C. A., 6), 126 F. (2d), 254; Feldman v. North British & Mercantile Ins. Co. (C. C. A., 4), 137 F. (2d), 266; Brady v. Mutual Benefit Dept. of Order of Ry. Conductors of America, 215 Ky., 177, 284 S. W., 1045; and Knopp v. Sherwood, 239 App. Div., 475, 268 N. Y. Supp., 16, affirmed, 265 N. Y., 591, 193 N. E., 334.
In the instant case the petition alleges that the defendants, *337 American Legion Post No. 650 Realty Co., Inc., and the individual members of American Legion Post No. 650 “jointly and severally, conducted or caused to be conducted within said building a social affair known. as a fish fry for which they charged each person attending the sum of one dollar ($1.00),” and that “defendants, and each of them, were negligent in failing to provide a safe heating system in the building; in equipping and maintaining the building with a defective heating system; in failing to adequately inspect said heating system; in failing to provide proper ventilation in the building; and in failing to warn invitees in the building, including decedent, of the presence of carbon monoxide fumes therein.”
Such petition probably states causes of action good as against demurrer so that defendants should plead to conserve their interests, but on the trial of the action to establish liability on the part of individual defendants evidence would have to be produced linking them as active participants in the affair resulting in plaintiff’s decedent’s alleged injuries, and, furthermore, that they knew or in the exercise of ordinary care should have known of the defective condition of the instrumentality claimed to have caused the injury. And, of course, the other elements necessary to support recovery would have to be proved.
The judgment of the Court of Appeals is reversed, and the cause is remanded to the trial court for further proceedings.

Judgment reversed.

Matthias, Bell, Radcliff and O’Neill, JJ., concur.
Taft, J., concurs in paragraphs one, two and three of the syllabus and in the judgment.
Radcliff, J., of the Fourth Appellate District, sitting by designation in the pláce and stead of Herbert, J.