EDWARD A. F. MEARS, MARIA MEARS, HIS WIFE, and others, *vs.* ARAMINTA M. MOULTON, Treasurer of the SOUTHERN ORPHANS' ASSOCIATION OF BALTIMORE, and others.

*An Association of Individuals, entitled to Sue.*

The members of a voluntary unincorporated association are entitled, as individuals having a common interest, to sue in regard to matters pertaining to or affecting their interests.

APPEAL from the Superior Court of Baltimore City, in Equity.

On the 14th of September, 1866, an account was opened in the Chesapeake Bank in the name of Mrs. E. A. F. Mears, Treasurer, and various sums were deposited from day to day until the 22d of December, when that account was closed, and a new one opened in the name of the "Southern Orphan Relief Fund," and beneath this entry on the books of the bank there were also written the words "Mrs. E. A. F. Mears, Treasurer."

On the 17th January, 1867, the amount on deposit to the credit of the fund was $1,662.68. Subsequently notice was given to the bank of claims adverse to Mrs. Mears, and a denial of her right to withdraw any portion of the funds from its custody. A bill of interpleader was filed by the bank, to protect itself against the responsibility of determining to whom, between conflicting claimants, the money deposited with it should be paid. Mrs. Araminta M. Moulton and her associates answered, claiming the fund as belonging to the "Southern Orphans' Association of Baltimore," by whom it was raised, and as whose property it was deposited in the bank by Mrs. Mears, then acting as treasurer of that association, and alleging that on the 4th of February, 1867, Mrs. Mears had been removed from her office as treasurer and the respondent, Mrs. Moulton elected or appointed in her stead,

and the bank was notified to hold the amount then remaining on deposit therein, subject to the order of the newly selected and authorized treasurer; on the other hand Mrs. Mears answered claiming the fund as belonging to another association called " The Southern Orphan Association," incorporated by the Legislature of Virginia, after the money was deposited with the bank, which incorporation she alleged, was obtained by the authority and sanction of the original association. She further alleged that under this act, a new society was formed and organized, of which she was elected treasurer; by reason of which the fund became the property of the new society, and she as the treasurer thereof had the right to control it, all claim of the original association being at an end. After the answers were filed the usual decree of interpleader was passed; a commission was then issued, testimony taken thereunder and after hearing upon the pleadings, &c., the Court (DOBBIN, J.) delivered the following opinion:

" It is admitted, on all hands, that the money in question was originally owned and deposited by a voluntary association of ladies, under the name of " The Southern Orphans' Association of Baltimore," of which Mrs. Ann M. Polk was president, and Mrs. Maria Mears was the treasurer ; and this association claims that its right thereto has never been assigned or abandoned.

" The other claimant is a society incorporated by the State of Virginia, under the name of ' The Southern Orphan Association,' composed of some of the same ladies who were members of the voluntary association first above named, and of some others, not members, who claim that this incorporation was obtained at the instance of the voluntary association, and that after the procurement of the charter, the voluntary association was resolved, by its own act, into this incorporated institution.

" The original title to the money having been, as is admitted, in the voluntary society,—it is obvious that it must remain there till divested by clear and conclusive proof of some act sufficient to have that effect.

" This proof the record fails to show. The evidence bearing upon it is conflicting, but the preponderance is against that conclusion; if it were sufficient to establish the allegation that the charter was applied for, and obtained from Virginia, at the instance of the voluntary association, there would still be no obligation on that association to accept it after it was obtained. It would still require a clear and unequivocal acceptance of it by the voluntary association, meeting as such, and determining in that character to assign its property to the new incorporation; of such an act there is not even a pretence. There is proof that after the charter was passed, there was held a meeting of the trustees of the corporation, composed in part of some members of the voluntary association, who were also trustees of the association, and met as such, at which meeting it was resolved to organize the corporation, which they then did; but this was not the act of the voluntary society, and could have no efficacy to transfer its property. In the absence of such vital proof I must decree that the title to the fund remains in the original owners of it: ' The Southern Orphans' Association of Baltimore,' of which Mrs. Ann M. Polk is president, and Mrs. Araminta M. Moulton, by substitution for Mrs. Mears, is treasurer.

" It was earnestly contended in the argument of this case, by the solicitors of the voluntary association, that the whole cost of this proceeding should be decreed against those of the defendants who represent the Virginia incorporation. This could only be done on the ground that the resistance by the latter has been needlessly vexatious and unrighteous; none of these parties have a personal pecuniary interest in this fund, and I am unwilling to believe that the promoters of so benevolent an enterprize, on either side, can have acted in this contest from any other motive than a conviction of duty, I shall therefore order the costs to be paid out of the fund.

In accordance with this opinion, the Court, on the 20th of April, 1868, decreed that the fund in controversy should be paid to Araminta M. Moulton, treasurer of " The Southern

Orphans' Association of Baltimore," she having been duly appointed (as appeared from the testimony) to that office in lieu of Mrs. Mears, the former treasurer; and further that the costs of the proceedings should be paid by Mrs. Moulton out of the fund. From this decree both parties appealed— Mrs. Mears and others from that part of the decree awarding the fund to Mrs. Moulton, and Mrs. Moulton and others from that part awarding the costs in the case to be paid out of the fund. [A motion was made to dismiss the latter appeal and the Court sustained the motion upon the ground that in equity the awarding of costs is a matter resting in the sound discretion of the Court, from the exercise of which no appeal will lie.]

The cause was argued before BARTOL, C. J., STEWART, BRENT, GRASON, MILLER, ALVEY and ROBINSON, J.

*R. S. Mathews,* for the appellants.

*A. H. Handy* and *Wm. Jessop Ward,* for the appellees.

ROBINSON, J., delivered the opinion of the Court.

This case originated in a bill of interpleader, filed by the Chesapeake Bank, requiring the appellants and appellees to interplead as to a certain sum of money deposited with the bank, and claimed by said parties respectively, in order that the Court might determine which of them was entitled to the fund.

It was claimed on the one hand, by the appellees *as members* of "The Southern Orphans' Association of Baltimore," and on the other by the appellants, a society incorporated by the Legislature of Virginia.

It is insisted in the first place, that the decree below is erroneous, because the appellees, being members of a *voluntary incorporated association,* are incapable of suing at law or in equity. No authority was referred to in support of this

10                    v. 30

position, and none we believe can be found. It is true, the Statute of the 43 of Elizabeth, is not in force in this State, but it is an error to suppose the claim of the appellees is based upon, or in any manner depends upon the provisions of that Statute. They are not claiming a devise or bequest to them as a voluntary association, and the principles governing such cases do not apply. On the contrary, it is admitted on both sides, that the fund in controversy was earned by the joint labor and industry of a voluntary association of ladies, under the name of "The Southern Orphans' Association of Baltimore." As such, it was by them deposited with the bank, and the right of *the members* of this association, whether incorporated or not, to claim the money cannot be questioned. They cannot sue in a corporate capacity, but as individuals having a common interest. Voluntary associations are recognized by law, and the right of the members to sue in matters pertaining to or affecting their interests, is expressly asserted in *Fells vs. Read,* 3 *Vesey,* 70; *Lloyd vs. Loaring,* 6 *Ves.,* 773; *Babb vs. Read, et al.,* 5 *Rawle,* 151, and in *Bealty and Ritchie vs. Kurtz, et al.,* 2 *Peters,* 566. In *Lloyd vs. Loaring,* the suit was between members of a Lodge of Freemasons, and Lord Eldon held, that although they could not sue in a corporate capacity, they might do so as members of the society. In this case the appellees in their answer claim as members of a voluntary association, and therefore come within the principles of the above cases.

If so, the only remaining question to be decided is, to which of the parties to this suit does the fund in controversy belong? The decision of this question depends entirely upon the proof in the record, and without reviewing it here in detail, it is sufficient to say that after a careful examination, we think the decree ought to be affirmed for the reasons assigned in the opinion of the Court below.

*Decree affirmed.*

(Decided 10th February, 1869.)