WILTON SNOWDEN, Administrator *d. b. n., vs.*
CROWN CORK & SEAL COMPANY et al.

*Gift Inter Vivos to Unincorporated Association for Charitable Purposes.*

An executed transfer of shares of stock, made by way of gift *inter vivos,* to an unincorporated association is valid, although the association is composed of an uncertain and fluctuating membership, who do not have a common interest in the property.

The owner of shares of stock in a corporation caused the same to be transferred on the books of the company and a new certificate issued in the name of Mrs. U., "treasurer of the Baltimore branch of the Woman's Foreign Missionary Society, or any other future treasurer of said branch." The donor before making delivery of the certificate to the treasurer wrote on it as follows: "I have transferred and given to Mrs. U., the treasurer of the Baltimore Branch of the Woman's Foreign Missionary Society, all my interest in the within certificate of seventy shares of stock, only reserving the payment of the dividends, to be paid by Mrs. U. or any

succeeding treasurer of said Branch to Mrs. M. during the term of her natural life, after her decease the stock to be kept and held by said treasurer in trust and dividends all devoted to the Madison Avenue Auxiliary Branch of said society." Both the Baltimore branch and the auxiliary here mentioned are voluntary unincorporated associations which send the money they collect to the Woman's Foreign Missionary Society, which is incorporated. After the death of the life tenant the shares of stock were claimed by the administrator of the deceased donor. *Held,* that the gift of the shares had been consummated; that the donee had capacity to accept the same; that, as there was no intention to create a trust, the Rule against Perpetuties was not violated, and that consequently the gift is valid.

*Decided February 2nd, 1911.*

Appeal from the Circuit Court of Baltimore City (NILES, J.).

The cause was argued before BOYD. C. J., BRISCOE, PEARCE, SCHMUCKER, BURKE, THOMAS, PATTISON and URNER, JJ.

*Richard S. Culbreth* and *Wilton Snowden, Jr.,* for the appellant.

*Richard M. Duvall* and *John Philip Hill,* for the appellees.

URNER, J., delivered the opinion of the Court.

It is well settled in this State that a gift *by will* to an unincorporated association is invalid. In the case now before us it is to be determined whether a gift to such an association consummated *inter vivos* must be held nugatory.

On April 24th, 1893, Francis A. Crook endorsed and executed upon his certificate for seventy shares of the capital stock of the Crown Cork and Seal Company of Baltimore

City an assignment, under seal and duly witnessed, as follows: "For value received I hereby assign the within stock and certificate to Mrs. Eliza R. Uhler, Treasurer of the Baltimore Branch of the Woman's Foreign Missionary Society, or any future Treasurer of the said Baltimore Branch of said Missionary Society." The certificate was then surrendered by Mr. Crook to the company, with instructions to transfer the stock on its books in accordance with the assignment. This was immediately done and a new certificate was issued reciting "that Mrs. Eliza R. Uhler, Treasurer of the Baltimore Branch of the Woman's Foreign Missionary Society, or any other future Treasurer of said Baltimore Branch of that Society is entitled to Seventy Shares of the capital stock of the Crown Cork and Seal Company of Baltimore City, transferable on the books of the Company on return of this certificate duly endorsed." The new certificate was received from the company by Mr. Crook, and he subsequently delivered it to Mrs. Uhler, after having written and signed upon it at his office the following:

"I hereby certify that on this 24th day of April, 1893, I have transferred, made over and given for value received to Mrs. Eliza R. Uhler, Treasurer of the Baltimore Branch of the Woman's Foreign Missionary Society, all my right, claim and interest in and thereto of the within certificate of 70 shares of stock, only reserving the payments of the dividends, to be paid by Mrs. Uhler, or by any succeeding Treasurer of said Baltimore Branch, to Mrs. Augusta Isabella Mowinckel (now in her 76th year, and at present residing at 2006 McCulloh street, Baltimore), during the term of her natural life; after her decease the stock to be kept and held by said Treasurer in trust and dividends all devoted to the Madison Avenue Auxiliary Branch of said Society."

During the succeeding fifteen years and until the death of Mrs. Mowinckel in December, 1908, the dividends on the stock were regularly collected and paid by Mrs. Uhler, and

her successors as treasurer, to the life beneficiary. The company has declined, however, to pay the dividends which have been declared since the expiration of the life estate because of doubts it entertains as to whether the transfer of the title to the stock, "under the circumstances and in the manner" stated, was effective, "except upon trust for Mrs. Mowinckel for life," and whether the endorsement on the new certificate might not be construed to be "an attempt to create a trust for an unincorporated voluntary association," or an infringement of the Rule against Perpetuities, "in which event the stock * * * might be declared to belong to the personal representatives" of Mr. Crook. It was insisted, therefore, by the company that these questions should be judicially determined, or a release obtained from the representatives of Mr. Crook, who died in 1894, before it should be required to assume the responsibility of paying dividends on the stock or permitting its further transfer.

In order to meet this requirement of the company the present proceeding in equity was instituted. An administrator *de bonis non* was duly appointed and made a co-defendant with the company, to the end that the estate of Mr. Crook might be properly represented. The bill was filed by The Woman's Foreign Missionary Society of the Methodist Episcopal Church, a corporation, and Margaret D. Rawlings, the present treasurer of the Baltimore Branch of the society.

In addition to the facts we have mentioned, it appears from the bill that the first-named plaintiff was incorporated in 1884 under the laws of the State of New York. It was formed by the amalgamation of various local societies, including the one now known as the Baltimore Branch. The constitution of the corporate body provided for the maintenance of a general office in the City of New York to serve in part as a central agency for the branches with respect to work common to them all. The management of the corporation was vested in an executive committee in whose membership the branches were represented. There are eleven of

these branches, each of which has charge of the work of the corporation in certain specified States of the Union. The plan of organization also includes further subdivisions of the corporation known as auxiliaries. These are attached to various Methodist Episcopal Churches and are under the direction of the branches within whose respective territory they operate. The Madison Avenue Auxiliary mentioned in the endorsement on the certificate in question is one of these agencies. There is no membership in the branches and auxiliaries distinct from that in the general society. The function of each auxiliary, as defined by the by-laws of the corporation, is to "aid its branch in interesting Christian women in the evangelizing of heathen women and in raisng funds for this work;" and all such funds "belong to the Woman's Foreign Missionary Society, and shall not be diverted to other causes." It is also provided generally that all money raised under the auspices of the society shall belong to the corporation. The branch treasurer is authorized and directed to receive all funds of the branch and to disburse them in accordance with particular corporate regulations. There are other provisions quoted in the bill from the constitution and by-laws of the corporation further demonstrating the vital and mutually dependent relationship existing between the society and its co-ordinate agencies and subdivisions.

The bill states that Mr. Crook and his wife, Mary E. Crook, had been for many years and until their death members of the Madison Avenue Methodist Episcopal Church, in the City of Baltimore; that the former had been a constant and liberal contributor to all the financial enterprises and benevolences of the plaintiff corporation through its Baltimore Branch and the Madison Avenue Auxiliary, and was thoroughly conversant with the objects and purposes of the society and with its organization, management and administration. It is mentioned also that Mrs. Crook was the first president of the Madison Avenue Auxiliary, and that the corporation, through its Baltimore Branch, has for many

years maintained and supported certain mission work in Foochow, China, under the name of "The Mary E. Crook Memorial."

It is asserted in the bill that the stock and dividends in controversy belong to the plaintiffs, but that as the Crown Cork and Seal Company has suggested doubts as to their rights in the premises and has refused to pay dividends on their demand, they are entitled to have the certificate and the endorsement thereon construed and their rights adjudicated. There is a prayer that the plaintiff treasurer of the Baltimore Branch may be declared the owner of the seventy shares of stock for the corporate purposes of the society.

The Crown Cork and Seal Company filed an answer admitting the facts alleged, stating its doubts as already indicated, and submitting to the judgment of the Court; while the administrator *de bonis non* of the estate of Mr. Crook demurred to the bill upon the grounds: that the gift of the stock was void because made to voluntary unincorporated associations; that it is a trust too indefinite to be enforced; and that it violates the rule against perpetuities. From the order of the Court below overruling his demurrer the administrator has appealed.

If the Baltimore Branch was capable of receiving a gift of stock from a living donor under the circumstances shown by the record there would be no occasion to hold the gift invalid simply because of the trust or condition imposed for the application of the dividends to its auxiliary. The capacity to take being recognized, the recipient would occupy the same position with respect to such a trust for its own uses as any other capable donee.

It has been repeatedly held that where there is a devise or legacy to a *corporation* for any of its authorized agencies, the gift will be sustained even though the designated beneficiaries may be unincorporated associations. *Baltzell* v. *Church Home,* 110 Md. 244; *Bennett* v. *Humane Society,* 91 Md. 10; *Woman's Foreign Missionary Society* v. *Mitchell,*

93 Md. 199; *Ege* v. *Hering,* 108 Md. 391; *Erhardt* v. *Balto. Monthly Meeting of Friends,* 93 Md. 669; *Doan* v. *Ascension Parish,* 103 Md. 662; *Barnum* v. *Baltimore,* 62 Md. 275; *Halsey* v. *Convention,* 75 Md. 275; *Hanson* v. *Little Sisters of the Poor,* 79 Md. 434; *Baptist Church* v. *Shively,* 67 Md. 493; *Trinity M. E. Church* v. *Baker,* 91 Md. 539. The general rule in such cases is that the donation will be regarded as made to the corporation not in trust but merely upon condition that it be applied to the particular corporate use, unless the intention to create a trust be clear; and such a disposition is held, therefore, not to violate the rule against perpetuities or to be void because of uncertainty as to its objects. For example, in *Woman's Foreign Missionary Society* v. *Mitchell, supra,* the testatrix directed that certain funds be held "in trust" by the Board of Managers of an incorporated missionary society for specified purposes including the education of girls in India. This was decided not to be a *trust,* but a gift to the society for use in the line of its mission work; and it was upheld as against both the objections just stated.

In the case before us the same principle must be applicable if the donee has the requisite capacity to retain the gift it has received. It would be an illogical and unjust discrimination to hold that though a voluntary benevolent society might be fully entitled to a gift when made *inter vivos,* and though the gift may have been dedicated to the essential purposes of the association, as represented in the franchise of an existing corporation with which it is identified, yet it must be denied the benefit of the equitable principles upon which similar dispositions to corporate donees are sustained.

The gift here in question was made to the Baltimore branch for the benefit of its auxiliary, an agency operating under the direction of the former body, and both acting under the auspices of a body corporate in aid of the specific cause to which the entire organization was devoted. If the branch were incorporated, it would be perfectly clear that

the disposition in question would be treated as having been made for its own defined objects and not subject to such a trust as would offend the rule against perpetuities; and we think the same conclusion is equally necessary if the society, notwithstanding its want of corporate character, is yet found to be capable of holding the stock it actually received.

It was suggested in argument that as the assignment of the stock and its transfer on the books of the company, as originally made, was in absolute terms, the donor was so completely divested of his interest in the stock as to make inoperative the declaration of trust subsequently endorsed on the certificate; but we do not find it necessary to consider this suggestion.

Independently of the question as to the capacity of an unincorporated society to become the recipient of a gift, there can be no doubt as to the transfer by the donor in this case being absolute and irrevocable. *Albert* v. *Albert,* 74 Md. 534; 20 *Cyc.* 1212; 14 *Am. & Eng. Encyc. Law,* 2nd Ed. 1009. Every legal requirement was observed to divest him of all title to the stock and to place it securely in the donee. *Baltimore Retort Co.* v. *Mali,* 65 Md. 93; *Pennington* v. *Gittinger,* 2 G. & J. 208. The assignment, surrender and cancellation of the old certificate, and the issue and delivery of the new one to the assignee, effectually accomplished the purpose of Mr. Crook to give the stock to the Baltimore Branch for the objects indicated unless this deliberate intention must be defeated upon the theory that the association was incapable of receiving a donation it has in fact held and administered for years.

If, in spite of the completeness of the transfer, the Baltimore Branch is incompetent to retain this stock as against the claim of the personal representatives of the donor, it would be in the same unfortunate position with respect to any other donations it may have received. As the invalidity of the benefaction would, in such event, depend upon the incapacity of the donee and not upon the nature of the

thing given, it is obvious that if the gift here under consideration had been made in money instead of stock, the society would have held it by an equally precarious tenure.

The controlling question, therefore, is whether an unincorporated association has any capability whatever for the reception or retention of a gift *inter vivos;* and as such a gift, when perfected, vests as valid a title to personalty in the donee as one acquired in any other mode (20 *Cyc,* 1212), it is apparent that the inquiry we are to make is broad enough to involve the right of a voluntary society to acquire money or property by any method.

When the gift now in dispute was made the law of Maryland distinctly recognized the existence of such associations as the Baltimore Branch by providing in *Code,* Art. 23, sec. 415, that: "It shall be sufficient in any suit, pleading or process, either at law or in equity, or before any justice of the peace, by or against any joint stock company or association, to describe the said joint stock company or association by the name or title by which it is commonly known, or by or under which its business is transacted." ·

The right thus conferred was exercised in the cases of *Littleton* v. *Wells, etc., Council,* 98 Md. 456, and 100 Md. 416, and in *My Maryland Lodge* v. *Adt,* 100 Md. 238. In the case first cited it was said: "The statute does not take away the right existing at common law to sue the members of an unincorporated association, but the creditor has the option to sue either the association or the members, and when the suit is against the former a judgment obtained can only affect its joint property." This is a clear recognition of the ownership of community assets by such a society, and its right to sue for their protection or recovery is equally manifest under the statute. In conferring upon an unincorporated association the right to come or be brought into Court in the name of the society as distinguished from the names of its individual members, the law plainly recognizes not only the existence of a common interest but also its repre-

sentation by the organized body. The power to sue in such a representative capacity presupposes the right to acquire and possess in the same capacity the interests which a suit might protect.

If the stock in question had been bought by the Baltimore Branch from Mr. Crook he could have sued it for the purchase price and collected his judgment out of its joint assets. If he had declined to deliver the stock in pursuance of such a sale, the branch could have maintained an action against him for the breach of contract. It is clear that under our law neither of the parties to the transaction would have been permitted to escape the obligation it imposed merely because the vendee society was not a body corporate.

Before the enactment of the statute quoted certain persons, as members of The Southern Orphans' Association of Baltimore, an unincorporated society, sued for the recovery of a fund earned by their joint industry for the purposes indicated by the name of their organization. The money had been depostied in bank and the claim was prosecuted in interpleader proceedings as against the opposing claim of a corporation asserting ownership of the fund as successor of the voluntary body. The case was presented on appeal to this Court in *Mears* v. *Moulton,* 30 Md. 142, and it was held that "the right of *the members* of this association, whether incorporated or not, to claim the money cannot be questioned. They cannot sue in a corporate capacity, but as individuals having a common interest. Voluntary associations are recognized by law, and the right of the members to sue in matters pertaining to or affecting their interests is expressly asserted in *Fells* v. *Read,* 3 Vesey, 70; *Lloyd* v. *Loaring,* 6 Ves. 773; *Babb* v. *Read et al.,* 5 Rawle, 151, and in *Bealty and Ritchie* v. *Kurtz et al.,* 2 Peters, 556."

In *Gittings* v. *Mayhew,* 6 Md. 113, it was held that the building committee of a voluntary association formed for the purpose of building an Athenæum might, in the absence of

incorporation, sue for subscriptions on the faith of which expenses had been incurred; and in a similar case JUDGE COOLEY said: "There is no doubt that the trustees of any unincorporated society which is organized for a lawful purpose may receive gifts and promises on its behalf." *Allen* v. *Duffie,* 43 Mich. 4.

The recognition thus accorded to unincorporated associations at common law was simply extended by the act to which we have referred so as to permit them to represent for the purposes of litigation the joint interests of its members.

In the case at bar we find a voluntary society possessed of a certificate of stock issued in the name of its treasurer and donated to the association for the specific objects for which the individuals who compose it have combined. Whether the gift be regarded as having been made to the organization as a representative entity or to its members for the promotion of their common enterprise, it has been actually and completely consummated, and to permit it to be revoked could only be upon the theory that such an association, though distinctly recognized by the law, can have no vested property rights which are entitled to be respected.

The ground upon which we are asked to deny to the Baltimore Branch the capacity to retain the stock it holds is that an unincorporated society has been frequently decided by this Court to be incapable of receiving a devise or bequest, and that there is no distinction in this regard between a gift by will and a perfected gift *inter vivos.* In our judgment there is a very practical and important difference between these two methods of transferring title. A testamentary gift is simply an expression of the will of the testator which can become effective only by the aid and agency of the law; while a gift from a living person to another is an act wholly *in pais.* So far as the participation of the donor himself is concerned, the former disposition is merely *declared,* while the latter is *consummated.* The one is *in fieri* and the other is an *accomplished fact.*

If, instead of making his gift to the Baltimore Branch in his lifetime, Mr. Crook had made a corresponding bequest by will, the conditions would have been altogether different. The title to the stock could have passed, if at all, only through the processes of administration (*Rockwell* v. *Young,* 60 Md. 563; *Smith* v. *Wilson,* 17 Md. 460); and the identification of the beneficiaries would have been a matter for judicial inquiry. In such a situation the unincorporated legatee, not being an artificial person created by the law, and its membership not being certain and definite, and the Courts of this State having no jurisdiction to enforce charitable uses under the Statute of 43 Elizabeth or apart from its provisions, the bequest could not be given effect. *Dashiell* v. *Attorney-General,* 5 H. & J. 392; *Same* v. *Same,* 6 H. & J. 1; *Rizer* v. *Perry,* 58 Md. 112; *State, use Trustees M. E. Church,* v. *Warren,* 28 Md. 338; *Orrick* v. *Boehm,* 49 Md. 72; *Trinity M. E. Church* v. *Baker,* 91 Md., *supra.* The law would decline to gratify the expressed intent because, under its established rules, it could not recognize the designated beneficiary for the purposes of the proposed transfer of title. But a deceased donor who speaks through his will and who must make the law the instrument for the accomplishment of his wishes is under limitations which do not apply to a living donor who bestows his bounty by his own act upon objects which he himself identifies. It seems clear to us that the reason for the principle which defeats testamentary dispositions in favor of unincorporated institutions does not exist in a case like the present.

The distinction between gifts *inter vivos* and those by will, so far as they concern unincorporated associations, has been recognized in a very significant way by the Act of 1888, Chapter 249, codified as section 322 of Article 93 of the Public General Laws, which provides that "No devise or bequest of real or personal property for any charitable uses shall be deemed or held to be void by reason of any uncer-

tainty in respect to the donees thereof, provided the will or codicil making the same shall also contain directions for the formation of a corporation to take the same, and within the period of twelve calendar months from the grant of probate of such will or codicil a corporation shall be formed, in correspondence with such directions, capable and willing to receive and administer such devise or bequest."

This clearly indicates that the legislative mind did not entertain the idea that a gift made by a living person to the selected objects of his benevolence required any such statutory assistance, for it is not to be conceived that the act was intended to give any preference to testamentary donations over gifts *inter vivos,* or to exclude the latter from any recognition as a means of promoting the charitable uses which the statute proposed to favor.

In *Brown* v. *Thompkins,* 49 Md. 431, it was held that a statutory authorization to a designated religious body to "take and hold subscriptions or contributions in money or otherwise" contemplated the right to take by gift and did not confer the power to take by will, as against the provisions of Article 38 of the Bill of Rights to the effect that every gift, sale or devise of real or personal property for religious purposes to take effect after the death of the seller or donor, without the prior or subsequent sanction of the Legislature shall be void. The Court said that the "distinction between a 'gift' and a 'sale' and a 'devise' is thus expressly recognized by the Constitution."

Every case relied upon to support the objection to the capacity of the Baltimore Branch to hold the stock in dispute involved a disposition by will. Not a single decision has been cited from any jurisdiction which denied the right of a voluntary association to retain a gift which it had received in possession and which was susceptible of transfer by the act of the parties without the aid of legal process. The mere fact that the corporation whose stock was donated has suggested doubts as to the capacity of the donee does not render the

gift dependent for its original validity upon the aid of the law. For all present purposes the case is in the same position as if the administrator *de bonis non* of the estate of Mr. Crook were suing for the recovery of the stock from the Baltimore Branch. In fact, as the Crown Cork and Seal Company has not appealed, the administrator is the only party in this Court who questions the society's title. The donee is not seeking to have carried into effect an *intention* expressed by Mr. Crook, but is asking us not to disturb an *act* which he himself fully and finally performed. The administrator's contention, on the other hand, is not that the gift remained unperfected in any respect so far as Mr. Crook was concerned in his lifetime, but that the *actual* recipient was incapable of *legally* receiving, and that there is no difference in principle between the nullification by the Court of a gift *inter vivos* and the inability of the Court to gratify a testamentary intent.

It was argued for the appellant that the Statute of 43 Elizabeth relating to the enforcement of charitable uses places gifts *inter vivos* in the same category with all other charitable dispositions by its recital that "Whereas Lands, * * * Goods, Chattels, Money and Stocks of Money have been heretofore *given,* limited, appointed and assigned, as well by the Queen's most excellent Majesty, and her most generous progenitors, as by sundry other well disposed persons." An examination of the statute discloses that its purpose was to provide for the enforcement of existing donations which had not been employed "according to the charitable intent of the givers and founders," and to that end it confers certain powers upon the Court of Chancery. It does not purport to give validity to dispositions previously invalid. In view of the tenor of the statute and of the fact that it has never been in force in Maryland, we are unable to see how its recitals can affect the question we have now under consideration.

It is not necessary to discuss the various decisions of this Court holding that a gift by will to an unincorporated society is void, as we do not find the principle of those cases applicable to the wholly different issue here presented.

In our opinion the making and acceptance of the gift in this case was a valid and completed exercise of a lawful right on the part of Mr. Crook as donor and the Baltimore Branch as donee, and the latter is entitled to retain in its possession and ownership the stock it has thus received.

The argument on behalf of both the appellant and appellees was directed also to the question whether the Baltimore Branch was an integral part of the incorporated society with which it was connected and as such proper to be regarded as having the ordinary corporate capacity; but a discussion of this question is rendered unnecessary by the view we have taken as conclusive of the case.

The order of the Court below overruling the demurrer to the bill of complaint will be affirmed.

*Order affirmed with costs.*

------

PEARCE, SCHMUCKER and BURKE, JJ., dissented and PEARCE, J., delivered the following dissenting opinion:

I have heretofore expressed my conviction that dissenting opinions rarely add any real value to the reports of adjudicated cases, and that it is wise to refrain from them, under ordinary circumstances, but as the precise question in this case has never arisen in this State, nor elsewhere, so far as I am informed, and as it is, under the peculiar doctrine in this State relating to charitable uses, a question of more than ordinary interest, I feel warranted in stating the views which I entertan, and which compel me reluctantly to dissent from the conclusions of the Court.

The facts of the case being sufficiently stated in the opinion of the Court, I shall not restate them here, merely observing that for the sake of brevity I shall in this opinion designate "The Woman's Foreign Missionary Society of the Methodist Episcopal Church," as The Missionary Society; "The Baltimore Branch of the Woman's Foreign Missionary Society of the Methodist Episcopal Church," as The Branch Society; and "The Madison Avenue Auxiliary Branch of the Woman's Foreign Missionary Society of the Methodist Episcopal Church," as The Madison Avenue Auxiliary Branch.

In *Attorney-General* v. *Dashiell,* 5 H. & J. 392, JUDGE BUCHANAN laid down as law that the statute of 43 Elizabeth for regulating charitable uses was not in force in this State, and that, independent of that statute, a Court of Chancery cannot, in the exercise of its ordinary jurisdiction, sustain and enforce a bequest to charitable uses, which, if not a charity, would, on general principles, be void.

In *Atty.-General* v. *Dashiell* 6 H. & J. 1, the same question was brought under review, with the same conclusion, the Court holding in that case the benefit of the void bequest results to the next of kin of the testator.

In *Baltzell* v. *Church Home,* 110 Md. 270, JUDGE BOYD. speaking for the whole Court, said: "It would serve no good purpose to compare the decisions elsewhere with those made by our predecessors in *Dashiell* v. *Atty.-General,* 5 H. & J. 392, and 6 H. & J. 1. These cases have been too frequently and too recently recognized by us to permit us to disturb them, if we were inclined to do so." There can, upon principle, be no distinction, in this *respect,* between a gift under a will, and a gift *inter vivos,* and we have been able to discover none in the books. It is true that in *Brown* v. *Thompkins,* 49 Md. 431, this Court held that when the Legislature gives its sanction, and authoritizes a religious body to take and hold subscriptions or contributions in money or otherwise, for religious purposes the power thus to take by gift

does not embrace power to take by will, and gave as a reason for thus holding, that "Article 38 of the Bill of Rights declares that every *'gift', 'sale'* or *'devise'* of real or personal property for *religious purposes,* to take effect after the death of the *'seller'* or *'donor,'* without the prior or subsequent sanction of the Legislature, shall be void. The distinction between a *'gift,'* and a *'sale,'* and a *'devise,'* is thus expressly recognized by the Constitution." But it is clear that the Court did not mean to declare that there was any distinction between a gift under a will, and a gift *inter vivos,* and it is equally clear that the distinction meant was between benefits acquired from "sellers" or "donors," and those acquired from devise or bequest, and consequently what was there said has no application in the present case. Whatever then will avoid a gift under a will must avoid a gift *inter vivos.* If the devise or bequest fails because the devisee or legatee, as an unincorporated body is incapable of taking title, how is incapacity converted into capacity, because the gift is *inter vivos* and not under a will? To hold that in one case the gift is invalid, and in the other is valid is to confess the Courts to be impotent to avoid or prevent a transaction which the law forbids to be made, and declares to be void when attempted.

In *Halsey* v. *Convention,* 75 Md. 275, JUDGE ROBINSON, in speaking of the capacity of a corporation to take property for the purpose of founding and maintaining a school for boys, uses the words *gift* and *devise* as interchangeable, and JUDGE McSHERRY, in *Bennett* v. *Humane Society,* 91 Md. and in *Missionary Society* v. *Mitchell,* 93 Md., repeatedly uses them in the same manner, as do the leading text writers on the subject of gifts. In the one case, as in the other, if the donee is incapable of taking *for the expressed purpose of the gift,* the gift must fail. In case of a will, the law interposes, when properly invoked, to prevent an attempt to perfect the gift by delivery, and in case of a gift *inter vivos,*

the law, when properly invoked, interposes to declare the
physical delivery to' be ineffectual and to declare the donee
to be a trustee for those in whom the law vests the subject
of the gift. In *Lane* v. *Eaton*, 69 Minn. 141, where, as in
Maryland the English Law of Charitable trusts, and the
doctrine of *cy pres* has never been recognized, it was held
that a voluntary unincorporated association, constituting a
branch of the Salvation Army, whose membership is fluctu-
ating and uncertain, could not be the beneficiary under a
will, and in like manner in another case a donation to the
"Church of England" was held void, that not being a cor-
porate body. In all such cases the donee or legatee takes
only *the legal title,* and a trust results by implication of law
to the donor or his representatives, or to the testator's residu-
ary legatees or next of kin. *Sheedy* v. *Roach*, 124 Mass.
172; or as expressed by LORD ELDON, in *Morice* v. *Bishop
of Durham,* 16 Vesey, 521, "though the trust is not declared,
or is ineffectually declared, *or becomes incapable of taking
effect,* the party taking shall be a trustee, if not for those
who were to take by the will, for those who take under the
disposition of the law."

In *M. E. Church* v. *Jackson Square Church,* 84 Md. 173,
which was a case of a conveyance of land held void, there was
shown to be a valuable consideration for the conveyance and
for that *reason only,* a resulting trust was not raised, and
the grantees were held to take an absolute interest. But
here there is no consideration. In *Trustees* v. *Hart's Execu-
tors,* 4 Wheat., JUDGE MARSHALL said: "The bequest was
intended for a society which was not at the time, and might
never be incorporated. *According to law it is gone forever,*
and the property vests, if not otherwise disposed of, in the
next of kin. Can the bequest be taken by the individuals
who compose the association at the death of the testator ?
The Court is decidedly of the opinion they cannot. *No
private advantage was intended for them."*

In *M. E. Church* v. *Warren,* 28 Md. 338, where the testatrix bequeathed a moiety of the residue of her personal estate to the M. E. Church at Greenborough, that church was not incorporated when the will took effect, though it subsequently became incorporated. JUDGE MILLER said: "As a general rule, it is clear that a bequest or devise to an unincorporated association is void, and it is only by virtue of that peculiar jurisdiction exercised by Courts of Equity in regard to charitable uses that such bequests have ever been sustained * * *. It has been decided that the Statute of 43 Elizabeth concerning charitable uses has not been adopted, nor its principles recognized as part of the common law of this State, * * *. This bequest must therefore be held void, because there was, at the time the will took effect, no legatee in being capable of taking it."

· In the case now before us the Missionary Society is a duly incorporated body capable of taking for its corporate purposes under a devise, bequest or gift. The purpose of Mr. Crook was to make a gift, but the attempted gift was not to the corporate entity, the Missionary Society, but either to the Branch Society, or to the Madison Avenue Auxiliary, according as the one or the other might be held to be the real beneficiary under the face of certificate No. 353, or under the indorsement thereon which has been transcribed herein. If the proposed gift could be considered as complete in virtue of the assignment to Mrs. Uhler as Treasurer of the Branch Society, of the certificate of stock No. 122, and the issuance by the Crown Cork and Seal Company of the new certificate No. 353 to her as Treasurer of the Branch Society, then the gift was to the Branch Society. If, however, effect is to be given to the subsequent assignment and declaration of trust in favor of the Madison Avenue Auxiliary, endorsed on certificate No. 353, then the gift was to the Madison Avenue Auxiliary. But neither of these are corporate bodies. Both are voluntary unincorporated associations of individuals,

and under all the Maryland cases, such associations cannot take a gift such as that under consideration. They have no common personal interest in the subject of the gift. Hence they do not, in this case, come within the class of cases of which *Mears* v. *Moulton,* 30 Md. 142, is an illustration. In that case Mrs. E. A. F. Mears, as treasurer had an account in the Chesapeake Bank. Mrs. Mears was afterwards removed, and Mrs. Moulton was appointed treasurer in her stead. The bank filed a bill of interpleader to protect itself against the rival claimants of the fund. It was insisted that the appellees, Mrs. Moulton and others, members of a voluntary unincorporated association were incapable of suing, either at law or in equity, but the Court decreed the money should be paid to Mrs. Moulton as new treasurer, and this decree was affirmed on appeal, JUDGE ROBINSON saying: "It is an error to suppose the claim of the appellees is based upon, or in any manner depends upon the provisions of 43 Elizabeth. It is admitted on both sides that the fund in controversy was *earned* by the joint labor and industry of a voluntary association of ladies, under the name of the "Southern Orphans' Association of Baltimore." As such, it was by them deposited in bank and the right of the *members* of this association, whether incorporated or not, to claim the money cannot be questioned. They cannot sue in a corporate capacity, but as individuals *having a common interest.*"

The Missionary Society however seeks to bring the case within the exception established in *Shively* v. *Baptist Church,* 67 Md. 495. In that case there was a bequest to a church, a corporate body, "to be applied to the Sunday School belonging to, or attached to, said church." CHIEF JUDGE ALVEY said: "The Sunday School is shown to be an integral part of the church organization, and therefore embraced within the scope of the corporate functions and work of the church," and the bequest was held good; and that case was followed in *Halsey* v. *Convention,* 75 Md. 275; *Woman's*

*Foreign Missionary Society* v. *Mitchell,* 93 Md. 199; *Doan* v. *Ascension Parish,* 103 Md. 662; *Baltzell* v. *Church Home,* 110 Md. 270, and other cases.

But to bring this case within *Shively's case,* would be a plain inversion of the reasoning by which the bequests in that case and the other cases last cited, were sustained. In all those cases the bequests were directly to a corporate body capable of taking, and the uses to which the bequests were to be applied, were within the scope of the corporate functions and work of the capable legatee. The bequests were in fact bequests to a corporation for its general and corporate purposes. Here the gift is to a body incapable of taking, a voluntary unincorporated association, though organized as subsiduary or auxiliary, to the corporation. The proposition of the association we are now considering, like an inverted cone, must fall for want of a base upon which to stand.

This distinction was pointedly made in *Trinity M. E. Church* v. *Baker,* 91 Md. 539, in an opinion by the late JUDGE JONES.

One of the bequests in that case, in the ninth item of the will, was to "The Trustees of Randolph Macon College, a corporation, to be applied to aid deserving young women such as expect to attend the Randolph Macon Woman's College, at Lynchburg." A part of the work of the corporate legatee was carried on through the agency of the Randolph Macon Woman's College, organized by the parent corporation to carry out its general objects. This bequest was sustained under the decision in *Shively's case, supra.* But in item ten of the same will, thirty-five hundred dollars was bequeathed to the trustees of the corporation of Trinity M. E. Church, South, to be invested, and the annual income on six hundred dollars, part thereof, to be paid to the Trinity Auxiliary of the Woman's Foreign Missionary Society of the M. E. Church, South. This auxiliary was not an incorporated body, "but an independent voluntary association, called into existence by the volition of the members compos-

ing it, and continuing its existence only at the volition and
pleasure of its membership," which is the precise situation
in the case now before us; and that provision of item ten was
for that reason held void.    Another bequest under the eigh-
teenth item of the same will was to "The Woman's College,
at Lynchburg, Virginia, for the education of one or more
worthy girls."    The Woman's College at Lynchburg was not
an incorporated body, though an organized auxiliary of the
parent corporation.    JUDGE JONES declared that in his opin-
ion this bequest was void, the legatee named being incapable
of taking.    The majority of the Court did not deny the prin-
ciple involved in the view thus expressed by JUDGE JONES,
but rescued the bequest from invalidity, because they held,
upon certain evidence in the case that the term "Woman's
College" was a misnomer, and that the intention of the testa-
trix was to make *the corporation,* "The Trustees of the Ran-
dolph Macon College," the legatee under this item of her
will, and that being so, this bequest was valid for the same
reason that the bequest under the ninth item was valid.    In
this case there is no evidence upon which to find a misnomer,
and as it is clear that but for the fact that the majority of
the Court found there was a misnomer in that case that be-
quest would not have been sustained by the Court, that deci-
sion practically carries with it the authority of all the judges
who sat in the case, to the effect that the gift in this case is
void because the donee is incapable of taking.

This Court concurring with the learned Judge of the Cir-
cuit Court bases its opinion upon the proposition that this
was a gift *perfected by delivery,* and that such a gift can no
more be revoked by the donor than a sale or any other exe-
cuted contract, and that if not revocable by the donor in his
life, his executor, for the same reason, cannot revoke it, or
dispute its validity.    But surely this proposition must imply
a donee capable of *taking,* just as it implies a donor capable
of *making* the gift.    How can there be a perfected gift un-
less the donor is capable of giving, and the donee is capable

of taking? To hold otherwise is to beg the question of a perfected gift. If the attempted gift were intended to vest in the individuals composing this unincorporated association, a common, private, interest, *they* would be capable of taking in such capacity, and for such purposes. But such a purpose is conclusively repelled by any possible construction to be given to any or all of the instruments by which it was sought to vest this gift, either in the Branch Society, or in the Madison Avenue Auxiliary. It is just because the Statute of 43 Elizabeth is not in force in this State, that the gifts in the cases we have cited were held to be void. That statute was enacted for the very purpose of validating gifts which would have been otherwise invalid. Both in its title and its preamble, it refers to "goods, chattels, money, and stocks of money *given,*" etc., and gifts *inter vivos,* or "perfected gifts," as designated in the opinion of the Circuit Court are thus within the very terms of the act. The Court refers in support of the ground of its opinion, to section 415 of Article 23, in force from 1868 to 1908, which is as follows:

"It shall be sufficient in any suit, pleading, or process, either at law or in equity, or before any justice of the peace, by or against any joint stock company or association, to describe the said joint stock company or association, by the name or title by which it is commonly known, or by, or under, which its business is transacted." But that section refers exclusively to the *form* of pleading and could not have been designed otherwise to enlarge the powers or capabilities of joint stock companies or associations. Before that Act, such unincorporated associations were capable of suing or being sued in the names of the individuals composing the association, but their right thus to sue or be sued was limited, as held in *Mears* v. *Moulton, supra,* "to matters pertaining to or affecting their interests," etc., their common private interests. After the passage of that Act, and during its continuance upon the statute books, they could sue or be sued either by the names of those composing the association or by

the title under which their business was transacted, but there was no other enlargement of their capabilities or powers. We cannot perceive anything either in the case of *Littleton* v. *Wells Council,* 98 Md. 453, or *My Maryland Lodge* v. *Adt.,* 100 Md. 238, which supports the proposition under consideration, as in both those cases the associations were dealing with their common private interests. Their power to make contracts, or to accept gifts, must be exercised for their own private common interests, and not for those of a corporation such as the Missionary Society.

All the authorities agree that an acceptance is an essential and indispensable element of a valid gift *"inter vivos."*

In 14 *Amer. & English Enc. of Law,* 1015, 2nd ed., it is said: "To constitute a valid gift *inter vivos* there must be a gratuitous and absolute transfer of the property from the donor to the donee, *taking effect immediately,* and fully executed by a delivery of the property by the donor, and an acceptance thereof by the donee, * * *. To constitute a valid gift there must be the assent of both parties. There must be not only a delivery of the property, but also an *acceptance on the part of the donee." Idem* 1027.

In *Thornton on Gifts,* section 79, the author says: "Like in a contract there must be two *persons* to every gift, for an acceptance of the thing given is as essential as the acceptance of the terms of the proposed contract * * *. Until acceptance the donor has full power to revoke the gift, although every other act has been performed that is essential to make a perfect gift, section 81 * * *. This acceptance must be within the lifetime of the donor. It cannot be made after his death," sections 80 and 116. The decided cases sustain these text writers.

In *Pierce* v. *Buroughs,* 58 N. H. 302, it was held that "the assent of both parties is as necessary to a gift as to a contract." In *Scott* v. *Berkshire Bank,* 140 Mass. 157, the Court said, "the acceptance of the donee completes a contract between the donor and the bank."

In *Gray* v. *Nelson,* 77 Iowa, 69, a gift was held invalid, "because the evidence showed there was no acceptance of the gift."

In *Payne* v. *Powell,* 5 Bush. 248, where there was a conflict of evidence as to delivery, the Court said, "even if the view that there was delivery was adopted, still there is no evidence of an acceptance of the gift in the life of the father;" and it may be observed here that all the cases agree that in gifts between parent and child the Courts lean toward sustaining the gift if possible.

In *Love* v. *Francis,* 63 Mich. 192, it is said, "the acceptance of a gift need not be made immediately. It is sufficient if made before revoked *by death* or otherwise."

In *Blanchard* v. *Sheldon,* 43 Vt. 514, it is said, "to constitute a valid gift there must be *both* a delivery by the donor to the donee, or to someone for the donee, *and* an acceptance by the donee."

And in *Nickerson* v. *Nickerson,* 28th Md. 332, this Court speaking through Judge Alvey said: "To complete the investiture of title there must be the *mutual consent and concurrent will* of both donor and donee, or trustee or guardian acting for the donee in the acceptance of the gift," and in *Taylor* v. *Henry,* 48 Md. 557, Judge Alvey again declared acceptance to be essential. It is true that a donee is not required to accept a gift in person. He may, if *sui juris,* authorize an agent to accept it, or he may ratify acceptance by an agent who has undertaken to accept for him without authority. But, "it must be shown either that the agent has authority to accept or that his act was ratified by the donee before a revocation." *Thornton on Gifts,* section 88.

I may have dwelt unduly upon the necessity of an acceptance by the donee, but it seemed to me important to emphasize that necessity as the foundation of the conclusion to which I am driven, viz, that it is impossible to find any acceptance in this case.

It is conceded that at common law a bequest to an unincorporated body is void, and the reason is that it is neither a natural person nor an artificial person. It is neither endowed with the intelligence and volition which are natural attributes of every sane person of mature years nor has it been invested by the State, with those powers to be exercised for its benefit' through the agency of natural persons, who in their aggregate capacity constitute the body corporate.

The Legislature of this State with the commendable purpose of preventing the failure of bequests or devises in such cases, has provided that such bequests or devises shall not fail, if the will making the same shall contain directions for the formation of a corporation to take the same, and the actual formation of such corporation within twelve months from the date of probate of the will, and this provision serves to show how settled and inflexible is the rule of the common law, that an unincorporated body cannot take a bequest or devise. In the case at bar, there was no corporate body answering to the description of the donee in this case, and there has been none such formed since the date of the attempted gift, even if it were possible to suppose that the provision of the Code above mentioned, could, by any rational construction, be held to embrace such a case as this.

In *Hannon* v. *The State,* 9 Gill, 440, where a gift by deed was attacked, the Court of Appeals said: "Every sane man has authority to give away his property, unless he attempts it upon terms which the law repudiates as against sound policy. He cannot give it to be held in perpetuity, or by any tenure not consistent with the rules of law, nor may he devote it to impolitic or criminal objects." The English Statute of 43 Elizabeth was necessary in England to give validity to such charitable bequests, devises and gifts, as that now under consideration. The Courts of this State have declared that this statute "has not been adopted in this State, nor its principles recognized as part of the common law of this State." They have repudiated that statute as

against sound policy and to permit property in this State to pass and be held under its policy and principles, is in the language of 9 *Gill, supra,* to sustain a gift attempted to be made "upon terms which the law repudiates as against sound policy" and "to be held by a tenure not consistent with the rules of law." In *Thornton on Gifts,* section 64, it is said a gift cannot be made to a dead person, *"for a dead person has no power to accept it.'* Nor can one be made to an unborn infant," for the same reason. In the latter case the capacity to accept has never sprung into existence. In the former it has perished with the loss of intelligence and volition.

The principle upon which the text is founded is the same that in this case denies validity to the attempted gift and was established as far back as 12 *Cokes Rep., Hayne's case,* 113. "The case was that one Wm. Haynes had digged up the several graves of three men and one woman in the night, and had taken their winding sheets from their bodies, and had buried them again, and it was resolved by the Justices at Sergeants Inn in Fleetwood that *the property in the sheets remains in the owner, that is, in him who had property therein, when* the dead body was wrapped therewith, for the dead body is not capable of it as in 11th *Henry* 4. If apparel is put upon a boy, this is a gift in the law, for the boy hath capacity to take it; but a dead body, being but a lump of clay, hath no capacity * * *. *Also a man cannot relinquish the property he hath to his goods, unless they be vested in another."* This opinion or report I conceive to contain the absolute law of this case. It is couched in the quaint language and style of the period, but modern rhetoric could add nothing to its clearness or cogency.

In *Johnson* v. *Hines,* 61 Md. 131, the Court was considering the effect of a conveyance made by a trustee under a decree in equity, before the payment of the purchase money and without ratification of the sale, and held that the unauthorized deed of the trustee could convey no title to the pur-

chaser, and in so holding, used the following language: "That nothing can emanate from nonentity, or, as more tersely enunciated, *de nihilo nil,* is an axiom in the physical sciences which might be appropriately transferred to a judicial investigation of this nature." And it seems not inappropriate to repeat the language here. How can acceptance be presumed, or deduced from anything in the case, if the donee is neither a natural nor an artificial person; in other words if it is a nonentity. Or, recurring to the language of the Iowa case, *Gray* v. *Nelson, supra,* how could "the evidence more conclusively show that there was no acceptance of the gift," than by showing, as it does show here, that the donee had no capacity to accept?

It can make no difference in this view of the case that the parties here are not in Court of law, but in a Court of Equity.

In *DeGrange* v. *DeGrange,* 96 Md. 614, this Court said: "It has been uniformly held that unless the gift was perfected, and the subject matter of it had passed out of the dominion of the donor *and into that of the donee* in the life time of the donor, the gift was not perfected, and the donee could not recover it from the estate of the donor."

In no case will a Court of Equity interfere to perfect a defective or imperfect gift. "A gift which is not good and valid in law cannot be made good in equity." *Pennington* v. *Gittings,* 2 G. & J. 27; *Cox* v. *Hill,* 6 Md. 287. "Equity cannot make that good and enforcible as a gift *inter vivos,* which was incomplete, and therefore not enforcible at law." *Baltimore Retort & Fire Brick Co.* v. *Mali,* 65 Md. 98.

I share the desire of the learned Judge of the Circuit Court and of my brothers in this Court, to sustain this gift, but I have not been able to reconcile the decree which is here affirmed with the convictions which I entertain as to the legal principle which should control the case. I feel constrained to adopt the language of JUDGE MILLER, in *M. E. Church* v.

*Warren, supra,* where he said: "It is to be regretted that the wishes of the testatrix (donor) should be thus defeated, but our duty is to declare the law as we find it to be, not to make law for the purpose of carrying out what we may think in individual cases ought to be done," and for the reasons stated, but with sincere respect and deference to the views of the majority of the Court, I think the decree of the lower Court should be reversed and the bill be dismissed.

I am authorized by JUDGE SCHMUCKER and JUDGE BURKE to say that they concur in this opinion.