In the year 1871 the Book Depository of the Baltimore Annual Conference of the Methodist Episcopal Church in Baltimore City was duly incorporated under the General Laws of the State of Maryland. One of the purposes of the corporation as set forth in its charter was "The accommodation of the ministry and membership of said church with suitable buildings for religious, social and other meetings." The corporation thus formed secured a location at 112 W. Fayette street, which it occupied until the fall of 1874, when, having purchased the property then known as Nos. 166 and 168 W. Baltimore street, it removed to that location. At a meeting held on November 2d 1874, of *Page 89 
either the stockholders or the board of directors, the following resolution was presented and adopted:
"Resolved: That the committee be instructed to make arrangements for a reception at our new rooms of the Bishops of our church sometime during their session in this city next month; and, that they also make arrangements for raising at the same time a fund that will justify the society in setting apart the new hall for general church purposes free of rent."
As a part of the exercises referred to in the foregoing resolution, a dinner was given at the Carrollton Hotel, at which a proposition was brought forward to raise a fund of $10,000, if possible, which should constitute a Church Rooms Fund, the income of which was to be paid over to the Depository as compensation for the fitting up and maintaining a commodious room for meetings of the Baltimore preachers, the Missionary Society, the City Missionary and Church Extension Society, the Preachers' Aid Society, the Emory Grove Camp Meeting Association, the Women's Foreign Missionary Society and others. At this dinner subscriptions were taken from individuals present for various amounts, but which amounts in the aggregate fell far short of the $10,000 desired. Apparently the next step which was taken in the matter was on February 3rd, 1875, at a meeting of the board of directors of the Depository, when the following action was had:
"On motion of L.H. Cole resolved that the agent of the depository receive the money paid in on the Church Rooms Fund to keep a separate account of the same and use it in the transaction of his business until further instructions from the board."
And a week later, at a meeting held on February 10th, the fund so raised and to be raised were authorized to be invested. This fund was apparently paid, partly in cash, and partly in donations of the capital stock of the Methodist Book Depository, and finally reached the sum of $3,050. *Page 90 
The principal witness called by the plaintiff was Dr. David H. Carroll, for many years the agent of the Book Depository and the designated recipient of subscriptions intended for the Church Rooms Fund, under the resolution of February 3rd, 1875. Dr. Carroll's evidence, given entirely from memory, and after a lapse of over thirty years, is necessarily rather vague, and but for the books of the Depository which have been preserved containing entries, unfortunately meagre and at times vague, it would be a matter of extreme difficulty to reach any conclusion in the case. It does appear from the entries that there was apparently some shifting back and forth as between the sinking fund of the Depository and the Church Rooms Fund, stock of the appellant corporation, which finally culminated in February, 1881, when there was issued as appears from the stub of the stock book a certificate No. 145 of the capital stock of the appellant, for 61 shares to "Treas. Church Rooms Fund," and receipted for on the 25th February, 1881, by "D.H. Carroll, Treas," and on the same day, certificate No. 147 for 61 shares, also "issued to Treasurer Church Rooms Fund," and receipted for on the same day, February 25th, 1881, by "D.H. Carroll, Treas."
The Methodist Book Depository continued in business down until the fire of 1904, and during all that time continued to provide the associations before enumerated with accommodations for their meetings, and as dividends were declared upon the stock, they appear to have been covered in to the current receipts of the Book Depository. After the fire, the Depository, which had also throughout its existence been conducting a commercial business, discontinued business, sold its lot, and of its own accord and without any intervention by a Court, began a liquidation of its business and a distribution among the shareholders. As appears by the amended bill and answer, it was proposed in this liquidation to distribute all the sums realized among the stockholders other than, and without taking into account, the 122 shares issued as hereinbefore stated. To prevent this distribution, *Page 91 
and to preserve this fund, together with its proportionate increase from the enhanced value of the assets, for the original purposes of the donors this bill was filed.
The plaintiffs are David H. Carroll, Summerfield Baldwin and Benjamin F. Bennett, three of the subscribers to the original Church Rooms Fund, and the fourth is a corporation by the name of "The Trustees of the Church Rooms Fund of the Methodist Episcopal Church of Baltimore City," incorporated under the provisions of the General Laws of Maryland, on the 5th day of February, 1909. It clearly appears from the evidence that the subscriptions, contributions or donations made to the Church Rooms Fund were absolute gifts in furtherance of the objects for which the fund was inaugurated, and it, therefore, follows that none of the individual plaintiffs can have any claim whatever, as individuals, to share in or participate in the liquidation of the Book Depository on account of those 122 shares. The corporate plaintiff, which did not come into existence until long after all of the events connected with the origin and administration of this Church Rooms Fund, could only have an interest by a somewhat circuitous application of the doctrine of cy pres. But the objections to this are: First, that we have not here the technical charitable trust as defined by Mr. Justice Gray inJackson v. Phillips, 14 Allen, 556, and, second, that theStatute of 43d Elizabeth is not and never has been in force in the State of Maryland; Dashiell v. Attorney General, 5 H. J. 392; Halsey v. The Convention, 75 Md. 275.
The important question in this case is, whether or not the fund known as the Church Rooms Fund, and so described in the minutes, and which was contributed either in cash or by the donation of the capital stock of the Book Depository, and which was represented by the two certificates aggregating 122 shares, did or did not constitute a trust fund so as to properly come under equitable jurisdiction. Through all of the haze which the lapse of time has thrown *Page 92 
over this matter, a few facts stand out clearly; that the money or stock given, even if not given upon an express trust, were given and received upon a condition. This appears both from the testimony of Dr. Carroll, the minutes of the meeting on February 3d, which required it to be kept in a separate account, the report of the committee on the Church Rooms Fund in February, 1876; January, 1877; February, 1877, all of which antedated the establishment of the Sinking Fund Committee, the report of the agent of the Depository in 1880 and 1881, and finally the issuance to Dr. Carroll as treasurer of the certificates of stock for 122 shares, and a portion of which shares were by the report of 1882 shown to have been purchased from the Sinking Fund Committee.
The creation of a trust ordinarily is required to be with a reasonable degree of definiteness and precision, and many cases might be cited where the Courts have refused to construe a trust owing to the uncertainty of the language used to create it, or of the trustee in declaring its creation; but the cases are comparatively few which have arisen in the precise manner in which the question now arises. In the case of Ruhe v. Ruhe,113 Md. 601, this Court citing from the case of Coyne v. TheSupreme Conclave, 106 Md. 57, says: "If a man in confidence of the parol promise of another to perform an intended act should omit to make certain provisions, gifts or otherwise, such a promise would be specifically enforced in equity, although founded on a parol declaration creating a trust contrary to theStatute of Frauds, for it would be a fraud upon all parties to permit him to derive a benefit from his own breach of duty and obligation." In this case money and stock were contributed by various individuals upon what they believed to be a promise upon the part of the board of directors of the Book Depository to afford an appropriate meeting room for the gratuitous use of the church for all proper uses under their direction. If now when the corporation which has received *Page 93 
these benefits no longer affords the accommodation, and in addition to that proposes to distribute the proceeds derived from its liquidation among other stockholders, with no reservation for the protection of the shares of stock which the corporation itself had issued, and which constituted an evidence that the fund represented by these certificates was set apart for a specific purpose, to sanction such a proceeding would, under the language quoted, operate as a fraud, both on the original contributors and upon the associations or organizations for the benefit of which the contributions were made. Reference was made in the argument to the cases of Braithwaite v. The AttorneyGeneral, L.R. 1 Chan. 511 (1909), and Cunnack v. Edwards,
L.R. 2 Chan. 679 (1896), but in both of those cases the question arose by reason, not of the non-existence of a trustee to carry out and perform the trust, but because there was no proper beneficiary of the trust, and these cases are thus readily distinguishable from the present case. A case which much more nearly approaches the present case, is that of Spiller v.Maude, Jurist N.S. 10 Pt. 1, 1864, page 1089, in which Sir Saml. Romilly required the fund there in question to be paid into the Court; but that likewise arose from the approaching condition of there being no beneficiary entitled to the income of the fund, and the last survivor was making application to have the entire fund, principal as well as income, paid over to her, which application the master of the rolls denied, and required the fund to be brought into Court, that upon her death it might be treated as bona vacantia. When we turn to the American rule for a situation like the present where the question arises as a consequence of the voluntary dissolution of a corporation which apparently had control of a fund for a series of years, and in consideration of that had carried out the purpose specified when the fund originated, we have an entirely different proposition to deal with. The beneficiaries, or objects to be promoted by those who contributed this fund are not creditors in the sense that there is any money or property as such to pass to them, but *Page 94 
they are in a position of being entitled to the performance of an obligation by a body which had theretofore been rendering an important service, and in a wider sense, occupy a position not essentially dissimilar from that of a mercantile creditor. In the one case it is money which is due, and in the other the performance of a service or an obligation which is due, and in 10Cyc. 1330, it is said, "The dissolution by a voluntary act of its shareholders does not have any greater effect in putting an end to the powers of the corporation than would be produced by the expiration of its charter or a decree of forfeiture;" and again on page 1320, "The death of a corporation no more impairs the obligations of its contracts than does the death of a natural person, but its assets remain a trust fund or pledge for the payment of its creditors and shareholders, and a Court of equity will lay hold of those assets and see that they are duly collected and justly applied," and on page 1321, "a corporation can not by dissolving itself defeat the rights of its creditors, but if its officers die, resign or refuse to act, and its shareholders neglect or refuse to appoint others in their place, a Court of equity which never allows a trust to fail for want of a trustee, will interfere and appoint a receiver for the purpose of winding up and putting an end to the concern."
Neither the original nor the amended bill of complaint in this case contains any specific prayer that the Court shall declare a trust; but it does contain the usual prayer for general relief, and under this where the evidence warrants it, a Court of equity will never hesitate to give effect to a trust where the facts justify such a conclusion. Therefore unless there be some additional reason why a trust should not be declared as regards the 122 shares of stock of the depository, the law amply warrants it.
Objection is made to implying a trust in the present case upon the ground of the indefiniteness of the objects sought to be benefited, and the further fact that some or all of these supposed beneficiaries are unincorporated associations. Numerous *Page 95 
cases have been cited upon the theory that these bodies would come within the scope of the rule laid down in such cases as theBaptist Church v. Shively, 67 Md. 493; and Crisp v.Crisp, 65 Md. 422; but to place any such construction upon the Charter of the Methodist Book Depository would involve an extension of that doctrine far beyond anything which was in contemplation when those cases were decided. Nor is it necessary to do so in the present instance. All of the objections of this character which have been urged in the present case, were pressed upon this Court in the case of Snowden v. Crown Cork SealCo., 114 Md. 650, and were disposed of by the very careful and able opinion prepared by JUDGE URNER in that case. In that case, as in this, the question arose, not in the course of construction of any will or deed of trust, but with regard to a gift intervivos where the donee and beneficiaries alike were unincorporated, and the gifts, which in that case also were shares of stock, were sustained. A further discussion of this question would be simply a repetition of what was said in the opinion filed in that case, and no sufficient reason has been suggested in the argument why this Court should now reverse the rule which was there laid down.
The next question for consideration is, whether there was a sufficient designation of a trustee in this case, and whether that trustee was capable in law of taking the gift. It clearly appears both from the minutes of the directors, and from the stub of the stock-certificate book that David H. Carroll was the treasurer of this Church Rooms Fund. From the testimony he appears in that capacity to have collected what money was collected, to have turned it into the Book Depository for the acquisition of stock of that corporation, and to have receipted as such treasurer for the certificates of stock representing the 122 shares. These, so far as it is possible now to determine, were not made out in his name, but were made out in the name of the treasurer of the Church Rooms Fund. It is not necessary for the valid appointment of a trustee, that he shall be specified by name, or that the word "trustee" shall be used, provided it appears to the satisfaction *Page 96 
of the Court that the duties to be performed are such as are properly to be performed by one who is a trustee, and that the individual or corporation is designated with sufficient precision to leave no doubt as to the identity. There can be no question but what David H. Carroll, as treasurer of the Church Rooms Fund, was originally the trustee for this fund, as well as treasurer of it. But he assumed that when he ceased to be the agent of the depository, he at the same time ceased to be the treasurer of this fund, and the trustee, and thereafter performed no duties with regard to it. He testifies that at that time he turned the certificates of stock over to the Rev. John Lanahan, who succeeded him as agent, but whether the duties of treasurer and trustee were thereafter performed by Dr. Lanahan or by the Book Depository, nowhere satisfactorily appears from the record inthis case. The argument is made that the Book Depository was incapable of acting as trustee. With this view we are unable to agree, in view of the fact that one of the declared objects of the formation of the corporation was "the accommodation of the ministry and membership of said church with suitable buildings for religious, social and other meetings." The object sought to be attained by the donors was distinctly in line with this purpose.
The original certificates for the 122 shares have apparently disappeared and been lost or destroyed; but there is nothing to show that there was ever any transfer of them to any person or corporation, and they are therefore outstanding, representing the investment of this fund, which must now be regarded as a trust fund, and as such entitled to share pro rata in the liquidation of the assets of the corporation, the Book Depository.
From what has been said, it follows that the decree of the Circuit Court No. 2 of Baltimore City in this case will be affirmed.
Decree affirmed, costs to be paid by the Book Depository ofthe Baltimore Annual Conference of the Methodist Episcopal Churchin Baltimore. *Page 97